DeALMEIDA, P.J.T.C.
This matter concerns a veteran’s eligibility for an exemption from local property taxes for his dwelling for tax year 2011 based on disabilities he suffered from exposure to enemy chemical agents in the course of military service in Operation Northern Watch/Southern Watch. Had plaintiffs exposure occurred on the Arabian Peninsula or in the Persian Gulf his eligibility for an exemption would not be in question. Plaintiffs military service, however, took place at a Navy weapons laboratory in California, where he examined chemical agents recovered from the battlefield in Iraq and transported to the United States for analysis. Defendant Hillsborough Township contends that plaintiff is not entitled to an exemption because his disabilities did not result from active service in the “theater of operation” of the conflict, which the municipality contends is limited to the specific geographic regions in the Middle East in which Operation Northern Watch/Southern Watch took place. The municipality also argues that plaintiff failed to comply with the statutory procedure requiring the filing of a written exemption claim for 2011 and that his joint ownership of his home with his former wife precludes the award of an exemption.
For the reasons explained more fully below, the court concludes that the Legislature did not place a geographic limitation on eligibility for a disabled veteran’s exemption based on service in Operation Northern Watch/Southern Watch. As a result, plaintiffs disabilities, although resulting from military service in the United States, qualify him for an exemption for his dwelling pursuant to N.J.S.A. 54:4-3.30 and N.J.S.A. 54:4-8.10. In addition, the court concludes that plaintiffs failure to file a written claim with the tax assessor for tax year 2011 and his joint ownership of his home with his former wife do not preclude the award of an *42 exemption. The exemption will be applied to plaintiffs proportionate share of ownership of the property.
I. Findings of Fact
This opinion sets forth the court’s findings of fact and conclusions of law on the parties’ cross-motions for summary judgment. R. 1:6—2(f). The court’s findings of fact are based on the certifications and exhibits submitted by the parties on the motions.
Plaintiff Reginald J. Wellington was a member of the United States Navy from September 24, 1997 until September 24, 1999, the date on which he was honorably discharged. Mr. Wellington was stationed with a Marine Corps unit during Operation Northern Watch/Southern Watch, in which the United States enforced a no-fly zone and United Nations sanctions in Iraq. Mr. Wellington served as an advanced laboratory technician in a military laboratory in San Diego. As part of his duties, he handled chemical agents recovered from the battlefield in Iraq and brought to the United States for testing. The purpose of the laboratory testing was to identify the chemical agents being used by the enemy and to develop protection for members of the United States military in sendee in the Arabian Peninsula, Persian Gulf and elsewhere.
The United States military determined that as a result of his exposure to enemy agents, Mr. Wellington developed Multiple Sclerosis and lost the use of his hands and feet. Because of his disabilities, Mr. Wellington, who is 35 year’s old, is largely confined to his home, spends most of his time in bed or a wheelchair, and cannot conduct basic life activities without assistance. He also suffers from severe depression and chronic fatigue syndrome related to his physical condition. The United States Department of Veterans Affairs declared Mr. Wellington 100% permanently disabled as the result of military service.
Mr. Wellington purchased a residence in Hillsborough Township on May 17, 2007. According to the deed, he owned the property as a joint tenant with the right of survivorship with plaintiff Catherine A. Pangilinan, his former wife. On March 9, 2009, he filed a claim with the Hillsborough Township tax assessor for a tax exemption for the residence pursuant to N.J.S.A. 54:4-3.30, which *43 provides an exemption from local property taxes for the dwelling house and lot of any citizen and resident of this State honorably discharged from active military service, in time of war, who has a 100% permanent service-related disability.
On March 24, 2009, the tax assessor denied plaintiffs exemption claim. The reasons for the rejection were two-fold: (1) that plaintiff did not serve a minimum of 14 days “in the actual combat zone” of Operation Northern Watch/Southern Watch; and (2) that plaintiff held only partial ownership of the property in question.[1] The denial notice provides that pursuant to N.J.S.A. 54:3-21, plaintiffs time to appeal to the county board of taxation expired on April 1, 2009, or, if the denial was issued “too late” to file an appeal by April 1, 2009, then plaintiff was entitled to file an appeal by April 1, 2010.
Plaintiff did not meet either of these deadlines. Instead, plaintiff filed a petition with the Somerset County Board of Taxation on March 28, 2011. The petition challenges the denial of the exemption and requests an exemption for tax year 2011. As a taxpayer aggrieved by the 2011 assessment on his property, plaintiff complied with the jurisdictional filing deadline established in N.J.S.A. 54:3-21 for that tax year.
On June 5, 2011, the county board issued a Judgment denying the exemption for tax year 2011.
On August 11, 2011, plaintiff filed a timely Complaint in this court challenging the county board Judgment. The Complaint also disputes the amount of the assessment on the property for tax year 2011. Plaintiffs Complaint was filed within the filing deadline established in N.J.S.A. 54:51A-9 for an appeal to this court from a Judgment of the county board of taxation.[2]
*44 On March 2, 2012, the municipality moved for summary judgment in its favor. The township argues that Mr. Wellington did not satisfy the statutory requirements for an exemption for tax year 2011 because he did not suffer a disability as a result of “active service in time of war,” given that his disabilities arose from service in the United States and not in the theater of operation of Operation Northern Watch/Southern Watch. In addition, the municipality contends that plaintiff’s joint ownership of his residence with his former wife precludes an exemption. Defendant also argues that plaintiff cannot seek relief in this court without having first filed a written exemption claim with the tax assessor for tax year 2011.
On May 10,2012, plaintiff opposed the municipality’s motion and cross-moved for summary judgment in his favor on the exemption claim. He argues that his military service in California satisfies the criteria for an exemption set forth in N.J.S.A 54:4-3.30 and N.J.S.A 54:4-8.10 because the Legislature did not place a geographic limitation on eligibility for service-related disabilities arising from Operation Northern Watch/Southern Watch. He contends that the “theater of operation” of that conflict was brought to him in California when dangerous weapons were removed from the battlefield and delivered to his laboratory. In addition, plaintiff argues that nothing in the statute requires a written application be filed with the tax assessor or precludes the award of an exemption to a disabled veteran who jointly owns his residence with another person.
After briefing, the court heard oral argument from counsel. During argument a question arose with respect to whether plaintiff seeks the exemption for tax years 2009 and 2010, as well as 2011. The jurisdiction of the court to entertain claims from those years is unclear in light of the filing date of the Complaint. See N.J.S.A. 54:3-21. Because the Judgment of the county board, the Complaint and the moving papers address only tax year 2011, the court’s opinion is limited to that year. Plaintiff is free to move *45 prior to the entry of Judgment to amend the Complaint to include tax years 2009 and 2010. Should such a motion be made, the court can address the jurisdictional question for those tax years after full briefing by the parties.
II. Conclusions of Law
Summary judgment should be granted where “the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.” R. 4:46-2(c). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995), our Supreme Court established the standard for summary judgment as follows:
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material tact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
“The express import of the Brill decision was to ‘encourage trial courts not to refrain from granting summary judgment when the proper circumstances present themselves.’ ” Township of Howell v. Monmouth County Bd. of Taxation, 18 N.J.Tax 149, 153 (Tax 1999)(quoting Brill, supra, 142 N.J. at 541, 666 A.2d 146). The court concludes that this matter is ripe for decision by summary judgment. There are no material facts genuinely in dispute between the parties and resolution of plaintiffs claim depends on the interpretation of various statutory provisions.
A. Service in the Theater of Operation of Operation Northern Watch/Southem Watch.
Article VIII, Section 1, Paragraph 3 of the State Constitution authorizes deductions from local property taxes for veterans in certain circumstances. The provision states in relevant part that:
Any citizen and resident of this State now or hereafter honorably discharged or released under honorable circumstances from active service, in time of war or other emergency as, from time to time, defined by the Legislature, in any branch of the Armed Forces of the United States shall be entitled, annually to a deduction from *46 the amount of any tax bill for taxes on real and personal property, or both ... in the sum of ... $250 in each tax year [after 2002.] ... Any person hereinabove described who has been or shall be declared by the United States Veterans Administration, or its successor, to have a sendee-connected disability, shall be entitled to such further deduction from taxation as from time to time may be provided by law.
[N.J. Const. art. VIII, § 1, ¶ 3.]
The Legislature implemented this constitutional provision through enactment of N.J.S.A. 54:4-3.30. That statute provides, in relevant, part:
The dwelling house and the lot or curtilage whereon the same is erected, of any citizen and resident of this State, now or hereafter honorably discharged or released under honorable circumstances, from active service, in time of war, in any branch of the Armed Forces of the United States, who has been or shall be declared by the United States Veterans Administration or its successor to have a service-connected disability ... declared by the United States Veterans Administration or its successor to be a total or 100% permanent disability ... sustained through enemy action, or accident, or resulting from disease contracted while in such active service, shall be exempt from taxation, on proper claim made therefore ____
[N.J.S.A. 54:4-3.30.]
In addition, the Legislature exercised its constitutional authority to define “active service, in time of war or other emergency” through enactment of N.J.S.A. 54:4-8.10(a). That statute, which is applicable to disabled veteran exemption claims by virtue of N.J.S.A. 54:4-3.33a, provides in relevant part:
“Active sendee in time of war” means active service at some time during one of the following periods:
5¡: * £
Operation Northern Watch and Operation Southern Watch, on or after August 27, 1992, or the date of inception of that operation, as proclaimed by the President of the United States, Congress or United States Secretary of Defense, which date of inception is earliest, who served in the theater of operation, including in the Arabian peninsula and the Persian Gulf, and in direct support of that operation for a period, continuously or in the aggregate, for at least 14 days in such active service, commencing on or before the date of termination as proclaimed by the President of the United States, Congress or United States Secretary of Defense, whichever date of termination is the latest; provided, that any person receiving an actual service-incurred injury or disability while engaged in such sendee shall be classed as a veteran whether or not that person has completed the 14 days’ sendee as herein provided____
[N.J.S.A. 54:4-8.10(a).]
*47 Two maxims of statutory interpretation guide the court’s analysis of plaintiffs exemption claim. First, because they represent a departure from the fundamental principle that all property owners shall pay their share of the local property tax burden “[tjax exemption statutes are strictly construed, and the burden of proving entitlement to an exemption is on the party seeking it.” Abunda Life Church of Body, Mind & Spirit, v. City of Asbury Park, 18 N.J.Tax 483, 485 (App.Div.1999) (citing New Jersey Carpenters Apprentice Training and Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 177-78, 685 A.2d 1309 (1996), cert. denied, 520 U.S. 1241, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997); Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214, 172 A.2d 420 (1961)). “[A]ll doubts are resolved against those seeking the benefit of a statutory exemption____” Chester Borough v. World Challenge, Inc., 14 N.J.Tax 20, 27 (Tax 1994) (quoting Teaneck Township v. Lutheran Bible Inst., 20 N.J. 86, 90, 118 A.2d 809 (1955)). These standards, however, do “not justify distorting the language or the legislative intent” of the exemption statute. Boys’ Club of Clifton, Inc. v. Township of Jefferson, 72 N.J. 389, 398, 371 A.2d 22 (1977).
Second, the plain language of a statute must be given effect by the courts. Merin v. Maglaki, 126 N.J. 430, 434, 599 A.2d 1256 (1992). “A statute should be interpreted in accordance with its plain meaning if it is clear and unambiguous on its face and admits of only one interpretation.” Board of Educ. v. Neptune Twp. Educ. Ass’n, 144 N.J. 16, 25, 675 A.2d 611 (1996) (quotations omitted). “[T]he best approach to the meaning of a tax statute is to give to the words used by the Legislature their generally accepted meaning, unless another or different meaning is expressly indicated.” Public Serv. Elec. & Gas Co. v. Township of Woodbridge, 73 N.J. 474, 478, 375 A.2d 1165 (1977) (quotations omitted). “ ‘The duty of ... this court is to give meaning to the wording of the statute and, where the words used are unambiguous, apply its plain meaning in the absence of a legislative intent to the contrary.’ ” Vassilidze v. Director, Div. of Taxation, 24 N.J.Tax 278, 291 (Tax 2008) (quoting Sutkowski v. Director, Div. *48 of Taxation, 312 N.J.Super. 465, 475, 712 A.2d 229 (App.Div. 1998)).
Five portions of N.J.S.A. 54:4-3.30 are relevant to plaintiffs claim. The statute establishes an exemption from local property taxes for the dwelling house and curtilage or lot of: (1) “any citizen and resident of this State;” (2) “now or hereafter honorably discharged or released under honorable circumstances;” (3) “from active service, in time of war;” (4) “in any branch of the Armed Forces of the United States;” (5) “who has been or shall be declared by the United States Veterans Administration or its successor to have a service-connected disability ... declared by the United States Veterans Administration or its successor to be a total or 100% permanent disability ... sustained through enemy action, or accident, or resulting from disease contracted while in such active service----” N.J.S.A 54:4-3.30(a)
There is no dispute that plaintiff satisfies four of the provisions. He is a citizen and resident of the State who was honorable discharged from the United States Navy and declared by the relevant military authorities to have a 100% permanent disability resulting from disease contracted while in service. The pivotal question before the court is whether plaintiffs 100% permanent disability arose “from active service, in time of war.” That term has been defined by the Legislature in N.J.S.A. 54:4-8.10(a).
When read literally, the statute is grammatically incoherent. N.J.S.A. 54:4-8.10(a) provides that “active service in time of war” includes “one of the following periods.” Those periods are defined to include “Operation Northern Watch and Operation Southern Watch, on or after August 27,1992, or the date of inception of that operation, as proclaimed by the President of the United States, Congress or United States Secretary of Defense, which date of inception is earliest ...” The statute thereafter modifies the defined period of time with the phrase “who served in the theater of operation, including in the Arabian peninsula and the Persian Gulf, and in direct support of that operation for a period, continuously or in the aggregate, of at least 14 days in such active service *49 commencing on or before the date of termination....” Obviously, Operation Northern Watch and Operation Southern Watch did not serve in the theater of operation, including the Arabian Peninsula or Persian Gulf, or in direct support of that operation. In order for the statute to make any sense, the court must recognize the readily apparent intention of the Legislature to describe eligible veterans as those who “served in the theater of operation, including in the Arabian Peninsula and the Persian Gulf, and in direct support of that operation” for the requisite period of time.
There is no dispute that plaintiff did not serve in the Arabian Peninsula or the Persian Gulf during Operation Northern Watch/Southern Watch. His military service took place in the United States. N.J.S.A. 54:4-8.10(a), however, does not establish a strict geographic service requirement for veterans who served during Operation Northern Watch/Southern Watch. According to the plain language of the statute, veterans “who served in the theater of operation, including in the Arabian peninsula and the Persian Gulf, and in direct support of that operation” are eligible for the exemption. N.J.S.A. 54:4-8.10(a). The theater of operation is defined to “include” the Arabian Peninsula and the Persian Gulf, but is not limited to those areas. This is in contrast to other provisions of N.J.S.A. 54:4-8.10(a) which define other military conflicts to include only delineated geographic areas. See e.g., N.J.S.A. 54:4-8.10(a)(defining eligibility to include those who “served in Grenada or on board any ship actively engaged in patrolling the territorial waters of that nation” during the Grenada peacekeeping mission, those who “served in Panama or on board any ship actively engaged in patrolling the territorial waters of that nation” during the Panama peacekeeping mission, those who “served in the Arabian peninsula or on board any ship actively engaged in patrolling the Persian Gulf’ during Operation Desert Shield/Desert Storm, and those who served “in Somalia or on board any ship actively engaged in patrolling the territorial waters of that nation” during Operation Restore Hope). Thus, the fact that plaintiff’s disability arose from his service in California does not, standing alone, exclude him from eligibility for an exemption.
*50 The critical question is whether plaintiff served “in the theater of operation” and “in direct support of that operation” while handling chemical agents at the Navy laboratory in the United States. N.J.S.A 54:4-8.10(a) does not define “theater of operation.” Nor does either party cite a statute, regulation or ruling of this State or a federal military authority defining the term generally or specifically with respect to Operation Northern Watch/Southern Watch.
It is too plain to require extended discussion that members of the military who are physically present on the battlefield during a military conflict serve in the theater of operation of that conflict within the meaning of N.J.S.A 54:4-8.10. Their health and life are endangered by exposure to enemy action, weapons and resistance, as well as numerous other dangers inherent in warfare. It is this exposure to risk for the benefit of national security that warrants a property tax exemption for veterans who are 100% permanently disabled as the result of their military service. In the unusual circumstances of this case, plaintiff, although in the United States during his military service, was directly exposed to the dangers of the battlefield. Enemy chemical agents intended to harm members of the United States military were recovered from the battlefield in Iraq and transported to the United States for testing. The purpose of the testing was to protect American soldiers and Marines engaged in military operations in the Arabian Peninsula, Persian Gulf and elsewhere. As a result of his exposure to actual, physical enemy weapons, plaintiff suffered 100% permanent disabilities. He was no less endangered by Iraqi chemical weapons at his laboratory in San Diego than were the servicemen and women who encountered those enemy agents on the battlefield and transported them to the United States. He suffered total, permanent disabilities as a result of his contact with those enemy weapons.
The court concludes that the Legislature did not intend to exclude the award of a disabled veteran’s exemption under the facts presented by this case. The purpose of the Constitutional provision allowing for the disabled veteran’s exemption is to “compensate veterans for the experiences of war and to encourage *51 veterans to purchase property in this State.” Darnell v. Township of Moorestown, 167 N.J.Super. 16, 18, 400 A.2d 492 (App. Div.), certif. denied, 81 N.J. 292, 405 A.2d 836 (1979). The exemption provides “some measure of economic relief’ to the veteran and his or her surviving spouse and in “the case of a totally disabled veteran, who is probably not gainfully employed, the need is likely to be especially acute.” Borough of Wrighttown v. Medved, 193 N.J.Super. 398, 402-403, 474 A.2d 1077 (App.Div.1984). Having been directly exposed to enemy weapons and having incurred significant, permanent disabilities as a result of that exposure, plaintiff falls within the constitutional and statutory parameters of the exemption.
The holding in Township of Dover v. Scuorzo, 392 N.J.Super. 466, 921 A.2d 450 (App.Div.2007), does not require a different outcome. In Scuorzo, a veteran served in the Air Force reserves for six years. He engaged in basic training for several months “but he was never called for active duty.” Id. at 469, 921 A.2d 450. The municipal tax assessor in the town in which the veteran owned a home granted a veteran’s deduction to the taxpayer pursuant to N.J.S.A. 54:4-8.11 for tax years 2000 through 2003. After an audit by the Director, Division of Taxation, it was determined that the veteran was not entitled to the deduction because his “only military service was for training purposes.” Ibid. As a result, the municipality disallowed the deduction for 2004 and demanded reimbursement for the deductions erroneously allowed in the preceding four years.
An appeal to the county board of taxation resulted in a determination that the veteran was entitled to the deduction. Id. at 470, 921 A.2d 450. This court affirmed, holding that the Director’s regulation contradicted the plain language of N.J.S.A. 54:4-8.11 and that “active service for training is included within the term ‘active service in time of war[.]’ ” Id. at 471, 921 A.2d 450 (quoting Township of Dover v. Scuorzo, 22 N.J.Tax 568, 581 (Tax 2005)). The Appellate Division reversed.
After an exhaustive review of the Director’s long-standing, consistent interpretation of the veteran’s deduction statute as not *52 applying to veterans who served in a reserve unit but were not assigned to a combat role, the court succinctly held:
We are satisfied that the term “active service in time of war” is not self-defining and unambiguous. Consequently, the Director properly undertook to define this term first by administrative regulation and later by the Assessors’ Handbook. We are also satisfied that the Director’s construction of this term, as excluding service solely for training in the National Guard or Reserves, is not plainly unreasonable, and therefore, the courts should defer to this construction.
[Id. at 477, 921 A.2d 450.]
There is no question here that plaintiff was called to active duty and served during Operation Northern Wateh/Southern Watch. He was not a member of a reserve unit and was not in training during the period at issue. The Scuorzo holding, and the regulation it upholds, therefore, do not apply to plaintiffs claim. As noted above, unlike a member of the military reserve in training who has the good fortune not to be deployed to a combat unit, plaintiff was directly exposed to enemy weapons during a military conflict. That exposure, albeit in the United States, resulted in his 100% permanent disability. While both forms of military service are worthy of the highest regard, the Legislature has determined that a disabled veteran’s exemption will be awarded only to those veterans who suffered 100% permanent disabilities as a result of their combat-related service. Plaintiff fits within that category.
B. Plaintiff’s Failure to Submit a Written Exemption Claim to the Assessor.
As noted above, plaintiff on March 5, 2009 filed a written claim for an exemption with the municipal tax assessor for tax year 2009. The assessor denied the application on March 24, 2009. Plaintiff did not appeal the assessor’s decision. Nor did he file an exemption claim with the assessor for tax years 2010 or 2011. Plaintiff elected, instead, to file a petition of appeal with the county board of taxation on March 28, 2011, alleging that he was entitled to an exemption for tax year 2011. This appeal followed issuance of the county board’s judgment denying the claim.
The municipality contends that plaintiff is precluded from seeking an exemption for 2011 because he did not file a written claim *53 with the assessor for that year prior to seeking relief before the county board and this court. N.J.S.A. 54:4-3.31 provides that
[a]ll exemptions from taxation under [N.J.S.A 54:4-3.30] shall be allowed by the assessor upon the filing with him of a claim in wilting under oath, made by or on behalf of the person claiming the same, showing the right to the exemption, briefly describing the property for which exemption is claimed and having annexed thereto a certificate of the claimant’s honorable discharge or release under honorable circumstances, from active service, in time of war, in any branch of the armed forces and a certificate from the United States Veterans Administration or its successor, certifying to a service-connected disability of such claimant of the character described in [N.J.S.A 54:4-3.30].
[N.J.S.A. 54:4-3.31.]
According to the municipality, without having filed a written exemption claim for 2011, plaintiff is precluded from seeking relief for that year. Defendant’s argument fails for two reasons. First, plaintiff did file a written claim for an exemption with the assessor, albeit for 2009. The facts on which he relied for the 2009 exemption claim were the same with respect to his claim for 2011. The property that is the subject of the exemption claim did not change. Nor was there a change in the nature of plaintiffs disabilities from 2009 to 2011. If the purpose of N.J.S.A. 54:4-3.31 is to give the municipal tax assessor the opportunity to review a veteran’s exemption claim and make a substantive determination on eligibility prior to review by the county board of taxation and this court, that purpose has been satisfied here. The municipal tax assessor was presented with a complete exemption claim by plaintiff. She reviewed the evidence he submitted in support of his claim and made a determination that he did not satisfy the statutory requirements for exemption.[3]
Second, it is well established in this State that a parcel’s exempt status is determined by its use and not by the owner’s compliance with exemption claim procedures. See Blair Academy v. Township of Blairstown, 95 N.J.Super. 583, 591, 232 A.2d 178 (App.Div.) (holding with respect to N.J.S.A. 54:4-4.4, which re *54 quires a triennial filing with the assessor of a statement to justify continuing exemption under N.J.S.A. 54:4-3.6, “[t]he failure of the municipal assessor to obtain the statements, which N.J.S.A 54:4-4.4 makes it mandatory for him to obtain, should not deprive this nonprofit academy of the tax exemption to which it is entitled by law.”), certif. denied, 50 N.J. 293, 234 A.2d 401 (1967); Township of West Orange v. Joseph Kushner Hebrew Academy, 13 N.J.Tax 48, 54 (Tax 1993) (holding that taxpayer’s failure to comply with N.J.S.A. 54:4-4.4 “has no effect upon the claimant’s entitlement to exemption under N.J.S.A. 54:4-3.6.”); Atlantic County New School, Inc. v. City of Pleasantville, 2 N.J.Tax 192,197 (Tax 1981) (holding that the filing of an exemption claim under N.J.S.A. 54:4-4.4 “is not a condition precedent to the allowance of an exemption” under N.J.S.A 54:4-3.6.) Emanuel Missionary Baptist Church v. City of Newark, 1 N.J.Tax 264, 267-268 (Tax 1980) (holding that with respect to initial statement seeking exemption pursuant to N.J.S.A. 54:4-4.4, “the assessor’s failure to obtain the statement does not vitiate the exemption otherwise allowable.”).
Here, it is the property’s use as the dwelling of a 100% permanently disabled veteran with a service-related disability that determines whether it is exempt from taxation. The fact that plaintiff did not file a written claim with the assessor for tax year 2011 after his 2009 written claim was rejected does not trump the constitutional and statutory provisions that provide an exemption for the property.
C. Plaintiffs Joint Ownership of his Dwelling.
As noted above, plaintiff obtained title to his residence in 2007 with his former wife as joint tenants with the right of survivorship. Nothing in the motion record establishes that his interest in the property changed between the time he obtained title and 2011.[4]
*55 In support of its denial of the exemption claim based on plaintiffs ownership interest the municipality relied on N.J.A.C. 18:28-2.10 entitled “Ineligible ownership.” That regulation provides “[ojwnership as a joint tenant, expect where an owner is a registered domestic partner, or tenant in common, does not qualify for the exemption.” N.J.A.C. 18:28-2.10(b).
As a general rule, “[e]ourts have recognized the Director’s expertise in the highly specialized and technical area of taxation.” Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). The scope of judicial review of the Director’s decision with respect to the imposition of a tax “is limited.” Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J.Super. 104, 109, 903 A.2d 442 (App.Div.), certif. denied, 188 N.J. 577, 911 A.2d 69 (2006); International Business Machines Corp. v. Director, Div. of Taxation, 26 N.J.Tax 102, 107-08 (Tax 2011). The Supreme Court has directed courts to accord “great respect” to the Director’s application of tax statutes, “so long as it is not plainly unreasonable.” Metromedia, supra, 97 N.J. at 327, 478 A.2d 742. See also GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A.2d 468 (1993) (“Generally, courts accord substantial defer *56 ence to the interpretation an agency gives to a statute that the agency is charged with enforcing.”).
On the other hand, it is well established that “an administrative agency may not, under the guise of interpretation, extend a statute to give it greater effect than its language permits.” Ibid. “[A]n administrative interpretation which attempts to add to a statute something which is not there can furnish no sustenance to the enactment.” Fedders Fin. Corp. v. Director, Div. of Taxation, 96 N.J. 376, 392, 476 A.2d 741 (1984) (quotations omitted); International Bus. Machines, supra, 26 N.J.Tax at 115-116.
In this instance, the statutory basis for the Director’s regulation is not evident. Nothing in N.J.S.A. 54:4-3.30 suggests that a disabled veteran is not entitled to an exemption on his dwelling if he owns that property as a joint tenant with someone other than a registered domestic partner. The municipality points to no statutory provision that limits the exemption in this fashion. Nor does the municipality offer a rationale for the Director’s interpretation of N.J.S.A. 54:4-3.30. The court can identify no principled reason why a disabled veteran should lose an exemption because he elects to hold title to his residence as a joint tenant with a parent, child, other relative, caretaker, business partner, creditor, stranger, or, as is the ease here, former spouse.
Indeed, this court in Hennefeld v. Township of Montclair, 22 N.J.Tax 166, 199 (Tax 2005), recognized that joint ownership of a dwelling with someone who is not the disabled veteran’s spouse or domestic partner does not vitiate the exemption. In that ease, a 100% permanently disabled veteran held title to his dwelling as joint tenants with the right of survivorship with his registered New Jersey domestic partner, who was also his spouse in a Canadian same-sex marriage. Id. at 172-173. At the time, New Jersey did not recognize same-sex marriages from other jurisdictions.[5] The court considered whether the veteran’s foreign mar *57 riage or New Jersey domestic partnership entitled him to a 100% exemption on his dwelling. In reaching his decision, Judge Bianco noted that the
Plaintiffs in fact hold title as joint tenants with right of survivorship. A qualified disabled veteran who shares ownership in his or her “dwelling house” as a joint tenant, is only entitled to a proportionate share of the disabled veteran’s exemption. This is true regardless of whether the joint tenants are the same-sex, the opposite sex, or married but hold title as joint tenants instead of tenants by the entirety.
[Id. at 199.]
This understanding of the law was reflected in the tax assessor’s decision in Hennefeld to grant a 50% exemption for the veteran’s dwelling.
N.J.A.C. 18:28-2.10 was, apparently, adopted in response to Judge Bianco’s decision in Hennefeld. There is, however, no statutory foundation for the regulation, which places on the disabled veteran exemption a limitation not found in N.J.S.A. 54:4-3.30. To the extent that the regulation contradicts the statute in this regard it is invalid.[6]
Plaintiffs ownership of his dwelling as a joint tenant with his former wife, therefore, does not vitiate the exemption. He is entitled to an exemption in a percentage that reflects his proportionate share of ownership in the subject property. Because the record is not clear with respect to the exact extent of plaintiffs ownership interest in his dwelling during 2011, the court reserves on that issue.
The township’s motion for summary judgment is denied. The taxpayer’s motion for summary judgment is granted in part. The court will enter an Order declaring Mr. Wellington eligible for an *58 exemption on the subject property for tax year 2011. The exemption will reflect his proportionate share of ownership in the property during that year, a fact not yet resolved. In addition, the valuation claim alleged in the Complaint remains pending.

 Both plaintiff's exemption application and the tax assessor's denial also refer to Joint Endeavor/Joint Guard, a military operation in Bosnia and Herzegovina that took place during plaintiff's military service. The parties are in agreement that Mr. Wellington did not participate in Joint Endeavor/Joint Guard and his claim for an exemption is not based on that conflict.

 The Complaint also names Ms. Pangilinan as plaintiff. Her interests in this matter appear to be limited to the challenge to the amount of the assessment, as *44 she does not claim an exemption. References to "plaintiff” in this opinion, which concerns only the exemption claim, refer to Mr. Wellington.

 The court notes that it is not deciding whether the delay between the 2009 rejection of the initial exemption claim by the assessor and the 2011 appeal of that decision by plaintiff precludes consideration of whether plaintiff is entitled to the exemption for 2009 and 2010.

 On February 3, 2012, plaintiff executed a quit claim deed with respect to the subject property in favor of Ms. Pangilinan in exchange for consideration of $1. In an accompanying seller’s residency certification plaintiff reported that his “percentage of ownership" was “0%” and that "consideration” for the transac *55 tion was “0%.” The statement also reported plaintiffs “current resident address" as a location in Phillipsburg. A receipt from the Somerset County Clerk for the recording of the deed reports consideration of $100. Defendant argues that this transaction suggests that between the time plaintiff purchased the property in 2007 and the time that he executed the quit claim deed, his interest in the property was reduced to 0%. There is nothing in the record establishing the accuracy of this contention, as neither party produced evidence that any transfer or reduction of plaintiffs interest in the subject property took place between 2007 and the 2012 filing of the quit claim deed. The meaning of the “0%” entry in the seller's certification is not clear, as plaintiff may have been reporting what he considered to be his interest in the property after filing of the quit claim deed. Nor is it clear from the record that plaintiff moved from the Hillsborough residence to Phillipsburg during 2011. A March 21, 2012 agreement purportedly terminated the quit claim deed. (The March 21, 2012 agreement refers to the February 3, 2012 document as a "quick" claim deed). Plaintiff's entitlement to an exemption for tax year 2012 is not before the court.

 New Jersey has since enacted the Civil Unions Act, L. 2006, c. 103 (approved Dec. 21, 2006), which accords same-sex couples in civil unions all of the rights *57 and obligations of married couples. In addition, in Formal Opinion No. 3-2007, the Attorney General determined that same-sex marriages from other States are recognized by New Jersey as civil unions with all of the rights and obligations of marriage. See Quarto v. Adams, 395 N.J.Super. 502, 929 A.2d 1111 (App.Div. 2007).

 Counsel for the parties informed the court that the Attorney General was notified of the pendency of this action and elected not to intervene on behalf of the Director, Division of Taxation.