NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-3351-15T3

FISHER, KRYSTAL and DAVID,

 Plaintiffs-Appellants, APPROVED FOR PUBLICATION

v. JULY 7, 2017

CITY OF MILLVILLE, APPELLATE DIVISION

 Defendant-Respondent.
_______________________________

 Argued May 10, 2017 - Decided July 7, 2017

 Before Judges Lihotz, Hoffman and Whipple.

 On appeal from the Tax Court of New Jersey,
 Docket Nos. 14080-2014 and 7736-2015, whose
 opinion is reported at 29 N.J. Tax 91 (Tax
 2016).

 Todd W. Heck argued the cause for appellants
 (Testa Heck Scrocca & Testa, P.A.,
 attorneys; Mr. Heck, on the briefs).

 Brock D. Russell argued the cause for
 respondent.

 The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

 Plaintiff Krystal Fisher appeals from a Tax Court order

denying a personal residence real estate tax exemption, granted
by the Legislature to certain disabled veterans.1 In a written

opinion, Tax Court Judge Mark Cimino reviewed the statute and

concluded defendant, the City of Millville, correctly denied

plaintiff's request for exemption. Fisher v. Millville, 29 N.J.

Tax 91, 101-02 (Tax 2016). The judge found, although plaintiff

is completely disabled as a result of her military service, her

injuries did not occur "in direct support" of military

operations in Afghanistan, which was required to claim the

disabled veterans personal residence tax exemption.

 On appeal, plaintiff challenges the judge's statutory

interpretation as "incorrect." We are not persuaded and affirm.

 The Tax Court's review resulted from cross-motions for

summary judgment. Id. at 92. The parties submitted a joint

statement of stipulated material facts. Ibid.

 In October 2002, plaintiff suffered injuries during an Army

training exercise, when she fell from a two-story building at

Fort Leonard Wood, Missouri. Ibid. The injuries did not

preclude her continued military service, and plaintiff was

transferred to Fort Stewart, Georgia, in March 2003, where she

was assigned to a unit scheduled to deploy to Afghanistan. Id.

at 93. However, in light of her injuries, plaintiff was not

1
 For ease, we refer solely to Krystal Fisher as plaintiff;
however, we understand and recognize David Fisher, Krystal's
husband, is also a plaintiff and has joined in the appeal.

 2 A-3351-15T3
sent overseas. Instead, she remained at Fort Stewart, assigned

to the "Rear Detachment" for her unit in Afghanistan. Ibid. In

this role, plaintiff's duties included

 shipping weapons, food, clothing and
 processed supplies for the overseas portion
 of her unit; keeping inventory logs of
 weapons utilized by her unit, including
 checking in and out each weapon; retrieving,
 processing, and formalizing reports for her
 unit overseas as to their military police
 activities; assembling protective shield
 units for Humvee military vehicles utilized
 in overseas combat; performing military
 police duties at Fort Stewart, a staging
 base; and participating in prisoner of war
 camp studies and simulations at Fort Stewart
 along with the development of prisoner camp
 protocols to be utilized overseas.
 Moreover, while stationed at Fort Stewart,
 plaintiff continued to train for potential
 deployment to Afghanistan as part of the
 military police.

 [Ibid.]

 The Army honorably discharged plaintiff on December 20,

2003. On May 21, 2014, she was declared 100 percent disabled by

the United States Department of Veterans Affairs.2

 Plaintiff submitted an application to defendant, claiming a

disabled veteran's property tax exemption, pursuant to N.J.S.A.

54:4-3.30. Ibid. The Millville City Tax Assessor issued a

2
 There is no explanation for the eleven-year gap between
plaintiff's discharge, and the disability certification. The
parties agree, and the trial court found, plaintiff's disability
was a result of her military service. Ibid.

 3 A-3351-15T3
notice of disallowance on June 26, 2014. Ibid. Plaintiff

appealed to the Cumberland County Board of Taxation, which

concluded the exemption was properly denied. Id. at 94.

Plaintiff appealed to the Tax Court, which conducted a hearing

on the parties' respective motions for summary judgment.

Analyzing the requirements for exemption, the judge concluded

plaintiff's injury was not suffered "in direct support" of

military operations in Afghanistan. Id. at 101. He denied

plaintiff's motion and granted defendant's motion for summary

judgment. Id. at 102.

 We review an order granting summary judgment applying the

same standard guiding the trial judge. Conley v. Guerrero, 228

N.J. 339, 346 (2017). "[S]ummary judgment will be granted if

there is no genuine issue of material fact and 'the moving party

is entitled to a judgment or order as a matter of law.'" Ibid.

(quoting R. 4:46-2(c)).

 The issue presented here is a legal question requiring

examination of statutory interpretation. "An appellate court

interprets . . . statutes . . . de novo." Meehan v.

Antonellis, 226 N.J. 216, 230 (2016) (quoting Mort. Grader, Inc.

v. Ward & Olivio, L.L.P., 225 N.J. 423, 435 (2016)).

 It is well settled that the goal of
 statutory interpretation is to ascertain and
 effectuate the Legislature's intent. Murray
 v. Plainfield Rescue Squad, 210 N.J. 581,

 4 A-3351-15T3
 592 (2012) (citing DiProspero v. Penn, 183
 N.J. 477, 492 (2005)). "In most instances,
 the best indicator of that intent is the
 plain language chosen by the Legislature."
 State v. Gandhi, 201 N.J. 161, 176 (2010)
 (citing DiProspero, supra, 183 N.J. at 492).
 "[W]hen the language of a statute is clear
 on its face, 'the sole function of the
 courts is to enforce it according to its
 terms.'" Hubbard v. Reed, 168 N.J. 387, 392
 (2001) (quoting Sheeran v. Nationwide Mut.
 Ins. Co., 80 N.J. 548, 556, 404 A.2d 625
 (1979)). In carrying out that function, an
 appellate court must read words "with[in]
 their context" and give them "their
 generally accepted meaning." N.J.S.A. 1:1-
 1. A court "may neither rewrite a plainly-
 written enactment of the Legislature nor
 presume that the Legislature intended
 something other than that expressed by way
 of the plain language." O'Connell v. State,
 171 N.J. 484, 488 (2002).

 [Cashin v. Bello, 223 N.J. 328, 335 (2015).]

 The Legislature provides a tax exemption for

 [t]he dwelling house and the lot . . . of
 any citizen and resident of this State . . .
 . honorably discharged . . . from active
 service, in time of war, in any branch of
 the Armed Forces. . . who has been or shall
 be declared by the United States Veterans
 Administration . . . from other service-
 connected disability declared by the United
 States Veterans Administration . . . to be a
 total or 100% permanent disability . . . .

 [N.J.S.A. 54:4-3.30(a).]

 The statute's enactment embodies the State Constitution's

authorization to adopt statutes granting veterans tax

exemptions. See N.J. Const. art. VIII, § 1, ¶3 (1947). The

 5 A-3351-15T3
Legislature has provided for two types of property tax benefits

for veterans; a partial deduction for veterans, honorably

discharged, who served in "active service in time of war,"

N.J.S.A. 54:4-8.11; and a total exemption for veterans,

honorably discharged, who served in "active service in time of

war," and who have been declared disabled as a result of their

service, N.J.S.A. 54:4-3.30(a). The term "active service in

time of war," defined in N.J.S.A. 54:4-8.10(a), is used to

determine eligibility for both the ordinary and disabled

veterans exemptions.

 Under N.J.S.A. 54:4-3.30(2), entitlement to an exemption

from real property taxes for a dwelling requires a party to

prove:

 (1) "[a] citizen and resident of this
 State"; (2) "now or hereafter honorably
 discharged or released under honorable
 circumstances"; (3) "from active service, in
 time of war"; (4) "in any branch of the
 Armed Forces of the United States"; (5) "who
 has been or shall be declared by the United
 States Veterans Administration or its
 successor to have a service-connected
 disability . . . declared by the United
 States Veterans Administration or its
 successor to be a total or 100% permanent
 disability . . . sustained through enemy
 action, or accident, or resulting from
 disease contracted while in such active
 service . . ."

 [Wellington v. Twp. of Hillsborough, 27 N.J.
 Tax 37, 48 (Tax 2012) (quoting N.J.S.A.
 54:4-3.30(a)).]

 6 A-3351-15T3
 Here, the only question is whether plaintiff satisfies

element three: whether her disability resulted "from active

service, in time of war." On this issue we remain mindful

"taxation is the rule, and the claimant bears the burden of

proving an exemption." N.J. Carpenters Apprentice Training &

Educ. Fund v. Borough of Kenilworth, 147 N.J. 171, 177 (1996),

cert. denied, 520 U.S. 1241, 117 S. Ct. 1845, 137 L. Ed. 2d 1048

(1997).

 In his written opinion, Judge Cimino detailed the historic

changes in the constitutional provisions directed to veterans

tax benefits and the Legislature's adaptation to these

amendments. Fisher, supra, 29 N.J. Tax at 94-97. In doing so,

the judge reviewed amendments to taxation statutes, which align

with the constitutional amendment, allowing relief to veterans

who suffered 100 percent disability "in time of war or other

emergency as, from time to time, defined by the Legislature

. . . ." Id. at 94 (citing N.J. Const. art. VIII, § 1, ¶ 3).

 The phrase "[a]ctive service in times of war" as used in

N.J.S.A. 54:4-3.30(a), is a defined term, which means the

"periods of time set forth in [N.J.S.A. 54:4-8.10]." N.J.S.A.

54:4-3.33(a). The Legislature listed sixteen separate military

conflicts, starting with the Civil War up to Operation Iraqi

Freedom, encompassed within the definition of "[a]ctive service

 7 A-3351-15T3
in time of war," to discern eligibility of disabled veterans

seeking tax exemptions and deductions.3 N.J.S.A. 54:4-8.10(a).

Many of these periods of war or conflict are defined

temporally — with a beginning and end date during which the

disabling injury must occur, regardless of cause or location.

See Fisher, supra, 29 N.J. Tax at 95 (describing treatment of

service and disability during the Vietnam and Korean conflicts

as an "all-encompassing approach, which only required service

during a conflict."). However, recent military conflicts are

more narrowly circumscribed.

 Applicable to plaintiff's time of service is the following:

 Operation "Enduring Freedom", on or after
 September 11, 2001, who served in a theater
 of operation and in direct support of that
 operation for a period, continuously or in
 the aggregate, of at least 14 days in such
 active service commencing on or before the
 date the President of the United States or
 the United States Secretary of Defense
 designates as the termination date of that
 operation; provided, that any person
 receiving an actual service-incurred injury
 or disability while engaged in such service

3
 Specifically, the statute lists these conflicts: the Civil
War, the Spanish American War, World War I, World War II, the
Korean conflict, the Lebanon crisis, the Vietnam conflict, the
Lebanon peacekeeping mission, the Grenada peacekeeping mission,
the Panama peacekeeping mission, Operation "Desert Shield/Desert
Storm," Operation "Northern Watch" and Operation "Southern
Watch," Operations "Joint Endeavor" and "Joint Guard" in the
Republic of Bosnia and Herzegovina, Operation "Restore Hope" in
Somalia, Operation "Enduring Freedom," and Operation "Iraqi
Freedom."

 8 A-3351-15T3
 shall be classed as a veteran whether or not
 that person has completed the 14 days'
 service as herein provided[.]

 [N.J.S.A. 54:4-8.10(a).]

 This definition of "[a]ctive service in times of war"

requires (1) service after September 11, 2001; (2) service in "a

theater of operation and in direct support of that operation";

and (3) a "service-incurred injury or disability while engaged

in such service." Ibid. (emphasis added). The statute, by its

clear terms, requires service in the specified geographic area,

an issue we discuss below, as well as a proof the disability

results from "such service" in the geographic area.4

 Plaintiff first refutes the judge's conclusion the

statutory definition is more constrictive and maintains the

series of amendments adding various conflicts over time was

intended to expand to availability of relief for military

missions and engagements, not just declared wars. Further, she

urges the Legislature "abandoned" the requirement the military

service occur "in expressly-defined geographic locales." While

it is true the amendments expanded benefits to veterans disabled

4
 Because we conclude plaintiff's service in Georgia is
incompatible with the statute's requirements for service "in a
theater of operation and in direct support of that operation,"
we take no position on what proofs would establish the causal
linkage between a plaintiff's "service incurred injury or
disability" and "such service."

 9 A-3351-15T3
in designated military conflicts, keeping step with the

Constitution's amendment to authorize Legislation covering

events "in time of war or other emergency," N.J. Const. art.

VIII, § 1, ¶ 3, we reject the suggestion benefits were intended

to be extended without regard to geographic limitations.

N.J.S.A. 54:4-8.10(a) circumscribes the definition of "active

service in time of war," and thus limits eligibility to those

injured "in a theater of operation and in direct support of that

operation." Inclusion of this geographic requirement was

purposeful.5

 As noted by the Tax Court in Wellington:

 It is too plain to require extended
 discussion that members of the military who
 are physically present on the battlefield
 during a military conflict serve in the

5
 The language used is "a theater of operation" versus "the
theater of operation," which the Tax Court has concluded does
not necessarily require presence on the battlefield. See
Galloway Twp. v. Duncan, 29 N.J. Tax 520, 527-28 (Tax 2016)
(extending benefits to doctor disabled during service while
treating soldiers wounded in combat, who were flown to Andrews
Air Force Base in Maryland).

 We also note the Legislature has varied the width and
breadth of the geographic requirements. Whereas the definition
of "Active service in time of war" relating to "Operation
'Restore Hope' in Somalia" required "serv[ice] in Somalia or on
board any ship actively engaged in patrolling the territorial
waters of that nation for a period," the definition for
"Operation Enduring Freedom," required, as we have noted,
service "in a theater of operation and in direct support of that
operation," a more flexible geographic requirement. N.J.S.A.
54:4-8.10(a).

 10 A-3351-15T3
 theater of operation of that conflict within
 the meaning of N.J.S.A. 54:4-8.10. Their
 health and life are endangered by exposure
 to enemy action, weapons and resistance, as
 well as numerous other dangers inherent in
 warfare. It is this exposure to risk for
 the benefit of national security that
 warrants a property tax exemption for
 veterans who are 100% permanently disabled
 as the result of their military service.

 [Wellington, supra, 27 N.J. Tax at 50.]

 Plaintiff next asserts her unit was stationed in a combat

zone, and her service was in direct support of that combat unit,

although performed stateside. She relies on prior Tax Court

cases she believes are "more typical" of the "modern

requirement," determining "direct support" can occur far from

the actual battlefield.

 "N.J.S.A. 54:4-8.10(a) does not define 'theater of

operation.'" Wellington, supra, 27 N.J. Tax at 50. Nor does

the statute define "direct support."

 Citing Wellington, plaintiff urges a "more balanced"

interpretation of the statute than the one provided by the Tax

Court. She contends she was exposed to the experiences of war

and, being disabled as a consequence of such service, as a

matter of policy, should result in entitlement to the claimed

tax relief. See Galloway, supra, 29 N.J. Tax at 532 ("With

modern warfare, it defies reality to claim that one has be on

the battlefield to experience war.").

 11 A-3351-15T3
 We find these arguments unavailing. We remain mindful

"[t]ax-exemption statutes are strictly construed against those

claiming exemption because of the compelling public policy that

all property should bear its fair share of the burden of

taxation." Kenilworth, supra, 147 N.J. at 177 (quoting

Princeton Univ. Press v. Borough of Princeton, 35 N.J. 209, 214

(1961)). Further, the court in Wellington acknowledged "the

unusual circumstances of th[e] case," which extended the

exemption to the plaintiff, who

 although in the United States during his
 military service, was directly exposed to
 the dangers of the battlefield. Enemy
 chemical agents intended to harm members of
 the United States military were recovered
 from the battlefield in Iraq and transported
 to the United States for testing. The
 purpose of the testing was to protect
 American soldiers and Marines engaged in
 military operations in the Arabian
 Peninsula, Persian Gulf and elsewhere. As a
 result of his exposure to actual, physical
 enemy weapons, plaintiff suffered 100%
 permanent disabilities.

 [Wellington, supra, 27 N.J. Tax at 50.]

 The facts here are distinguishable from those presented in

Wellington. We cannot agree plaintiff's injury experienced in a

fall during her Missouri basic training or her role performing

the Rear Detachment services outlined above in Georgia satisfy

the statutory requisites of service "in a theater of operations

 12 A-3351-15T3
and in direct support of that operation . . . ." N.J.S.A. 54:4-

8.10(a).

 We concur with Judge Cimino's analysis of the Legislature's

intent, concluding the determination turns on the exposure of

the service member to the harms of war, an experience not

visited upon plaintiff. Accordingly, plaintiff's disabling

injuries were not suffered in a theater of operation or in

direct support of a theater of operation, and thus, were not the

result of "active service in time of war," as defined in

N.J.S.A. 54:4-8.10(a).

 Finally, plaintiff asserts the statutory scheme amounts to

an equal protection violation, as up until recently, certain

military positions were closed to women. The parties stipulated

plaintiff remained in Georgia because of her injury, not because

of any policy discriminating against female soldiers. R. 2:11-

3(e)(1)(E).

 Affirmed.

 13 A-3351-15T3