**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5878-17T1

RONALD BENTZ,

      Plaintiff-Appellant,

v.

TOWNSHIP OF LITTLE
EGG HARBOR,

      Defendant-Respondent.

_____

Submitted June 6, 2019 – Decided July 11, 2019

Before Judges Simonelli and Whipple.

On appeal from the Tax Court of New Jersey, Docket No. 009763-2017, whose opinion is reported at 30 N.J. Tax 530 (Tax 2018).

Ronald Bentz, appellant pro se.

Gilmore & Monahan, PA, attorneys for respondent (Robin La Bue, on the brief).

Gurbir S. Grewal, Attorney General, attorney for amicus curiae New Jersey Division of Taxation (Melissa H. Raksa, Assistant Attorney General, of

counsel; Jamie M. Zug, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Ronald Bentz owns property in the Township of Little Egg Harbor. He is a veteran who served in the Navy from September 6, 1983 to September 5, 1986. In 1986, he was stationed on a ship during the conflict between the United States and Libya (the Libya conflict). He was honorably discharged in September 1986, and his discharge certificate indicates he was in "sea service." Effective September 6, 2016, the United States Department of Veterans Affairs (VA) declared plaintiff 100% permanently disabled due to a "wartime service-connected disability."

Plaintiff filed a claim for a disabled veteran's property tax exemption for the 2017 tax year pursuant to N.J.S.A. 54:4-3.30(a). He stated, in part, he was an honorably discharged disabled veteran with active wartime service during the Grenada peacekeeping mission and the Lebanon peacekeeping mission.

N.J.S.A. 54:4-8.10(a) provides as follows, in pertinent part:

> "Active service in time of war" means active service by a person, while in the United States Armed Forces, at some time during one of the following periods:
>
> . . . .

A-5878-17T1

The Grenada peacekeeping mission, on or after October 23, 1983, who has served in Grenada or on board any ship actively engaged in patrolling the territorial waters of that nation for a period, continuous or in the aggregate, of at least [fourteen] days commencing on or before November 21, 1983 or the date of termination of that mission as proclaimed by the President of the United States or Congress, whichever date of termination is the latest, in such active service; . . .

The Lebanon peacekeeping mission, on or after September 26, 1982, who has served in Lebanon or on board any ship actively engaged in patrolling the territorial waters of that nation for a period, continuous or in the aggregate, of at least [fourteen] days commencing on or before December 1, 1987 or the date of termination of that mission, as proclaimed by the President of the United States or Congress, whichever date of termination is the latest, in such active service[.]

Plaintiff did not serve in the Grenada peacekeeping mission or Lebanon peacekeeping mission, but his service during the Libya conflict occurred during the same time as those missions. The Libya conflict is not included in N.J.S.A. 54:4-8.10(a).

The Township disallowed plaintiff's claim because he failed to meet two statutory requirements: (1) "Active Duty in a qualified branch of the Armed Forces of the United States 'in time of war'"[;] and (2) "Peacekeeping Missions require a minimum of [fourteen] days service in the actual combat zone[.]" The Ocean County Board of Taxation (Board) affirmed the disallowance.

Plaintiff filed a complaint in the Tax Court, challenging the constitutionality of N.J.S.A. 54:4-8.10(a) under the Equal Protection Clause and Supremacy Clause. On July 25, 2018, Judge Mala Sundar issued a comprehensive written decision, finding the statute was constitutional. Bentz v. Twp. of Little Egg Harbor, 30 N.J. Tax 530 (Tax 2018). The judge conducted a broad historical review of the veteran's property tax exemption statutes and determined the separation of powers doctrine bars judicial interference in legislative functions. The judge found the New Jersey Constitution delegated the Legislature with the sole discretion to define an event in time of war or other emergency, and concluded the court lacked authority to graft the Libya conflict into N.J.S.A. 54:4-8.10(a).

Judge Sundar acknowledged that "the court can examine if in the performance of the constitutionally delegated powers, the Legislature violated the Constitution[,]" but found no such infirmity. Id. at 542. For one, the judge found our Legislature has not abdicated its constitutionally delegated powers, as is evident in N.J.S.A. 54:4-8.10(a) and its amendments. Id. at 543 (citing Fisher v. City of Millville, 450 N.J. Super. 610, 616-17 (App. Div. 2017) (recognizing that the Legislature has actively amended N.J.S.A. 54:4-8.10(a) "keeping step

with the Constitution's amendment to authorize Legislation covering events 'in time of war or other emergency.'"), aff'g 29 N.J. Tax 91 (Tax 2016)).

Judge Sundar also rejected plaintiff's arguments that the non-inclusion of the Libya conflict in N.J.S.A. 54:4-8.10(a) violates the Supremacy Clause and Equal Protection Clause of the United States Constitution. Plaintiff had argued that N.J.S.A. 54:4-8.10(a) violated the Supremacy Clause because the federal statutes pertaining to veterans are broader in scope as to a "time of war" designation. The judge found this argument unpersuasive because "[o]nly the State . . . imposes, or exempts from imposition, local property tax. . . . Therefore, definitions for purposes of local property tax are not controlled by, or overridden by, federal statutes relating to veteran's compensation or benefits." Id. at 547 (citing Twp. of Galloway v. Duncan, 29 N.J. Tax 520, 534 (Tax 2016)) (holding that the Exemption Statute need not "defer to a technical definition or term of art prescribed by military regulation or otherwise.").

As to the Equal Protection Clause, plaintiff argued he was entitled to the same treatment as a disabled veteran of the Lebanon peacekeeping mission. While Judge Sundar empathized with plaintiff's position, given that he actually witnessed war and war-like conditions, as compared to a veteran of the Lebanon peacekeeping mission, the judge rejected his argument for the simple reason that

"veterans' preference laws do not involve a suspect class." Id. at 547-48 (quoting Darnell v. Twp. of Moorestown, 167 N.J. Super. 16, 21 (App. Div. 1979)). As the judge explained:

> "[T]he Equal Protection Clause does not require that all persons be treated alike." As long as there is no "suspect" class, or classification which is affected by the legislation, "a legislative classification will be presumed valid, even if it has the effect of treating some differently from others."
>
> A "classification involving veterans does not result in 'invidious or irrational' distinctions among a state's residents; does not affect a suspect or semi-suspect class; and does not regulate fundamental rights."
>
> [Id. at 548 (alteration in original) (quoting Garma v. Twp. of Lakewood, 14 N.J. Tax. 1, 15, 12 (Tax 1994)).]

Thus, Judge Sundar found the court must examine the alleged unconstitutionality of N.J.S.A. 54:4-8.10(a), as applied to plaintiff, under the rational basis scrutiny, under which the court must determine whether the allegedly offensive legislation is rationally related to a legitimate State interest. Ibid. (citing Armour v. City of Indianapolis, 566 U.S. 673, 681, 680 (2012)) (where the "subject matter [of a legislation] is local, economic, social, and commercial [and] . . . a tax classification," it only need to pass rational basis scrutiny); see also Hooper v. Bernalillo Cty. Assessor, 472 U.S. 612, 618 (1985)

A-5878-17T1

("When a state distributes benefits unequally, the distinctions it makes are subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment. Generally, a law will survive that scrutiny if the distinction rationally furthers a legitimate state purpose.").

In addition to recognizing precedent has uniformly held that statutes which treat veterans differently for purposes of certain benefits, pass the rational basis muster, Bentz, 30 N.J. Tax at 549 (citing Ballou v. Dep't of Civ. Serv., 75 N.J. 365 (1978); Fischer v. West, 11 Vet. App. 121, 123-24 (Ct. Vet. App. 1998)), the judge provided numerous potential legislative motivations that would explain why the Legislature did not include the Libya conflict in N.J.S.A. 54:4-8.10(a), which were "'reasonably conceivable state of facts' [providing] 'a rational basis for the classification.'" Ibid. (quoting Armour, 566 U.S. at 681). The judge noted, for example:

> It may be that our Legislature did not consider the conflict with Libya for purposes of including it in the [N.J.S.A. 54:4-8.10(a)] because it was not federally identified as a war or as an emergency due to the short term, the quantum of armed personnel, costs or damages involved, or because the 1986 [Executive Order] imposed purely economic sanction or embargoes, or because under federal law, it never elevated to the level of a war for purposes of providing veteran benefits.
>
> [Ibid.]

Ultimately, Judge Sundar acknowledged that "[t]he 'burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'" Id. at 550 (quoting Armour, 566 U.S. at 681). As plaintiff had not negatived the above conceivable bases, and had merely asserted the federal government treats veterans who served during the Libya conflict more generously, which the judge found was not evidenced by federal legislation governing veterans' benefits, plaintiff had not provided sufficient evidence to overcome the presumptive constitutionality of N.J.S.A. 54:4-3.30(a) and N.J.S.A. 54:4-8.10(a). The judge, thus, dismissed plaintiff's complaint.

We recognize that "judges presiding in the Tax Court have special expertise; for that reason their findings will not be disturbed unless they are plainly arbitrary or there is a lack of substantial evidence to support them." Hackensack City v. Bergen Cty., 405 N.J. Super. 235, 243 (App Div. 2009) (quoting Alpine Country Club v. Borough of Demarest, 354 N.J. Super. 387, 390 (App. Div. 2002)). While the tax court's factual findings are entitled to deference, we need not defer to its interpretation of statutes or legal principles. Advance Hous., Inc. v. Twp. of Teaneck, 215 N.J. 549, 566 (2013). We review de novo an issue of statutory interpretation, such as the issue here. McGovern v. Rutgers, 211 N.J. 94, 108 (2012).

"The meaning of a tax statute must be discerned according to the general rules of statutory construction." Presbyterian Home at Pennington, Inc. v. Borough of Pennington, 409 N.J. Super. 166, 180 (App. Div. 2009). The court examines the statute's plain language and, if the language is clear, interprets the statute consistent with its plain meaning. Ibid. But, if the language is unclear, the court must review the legislative history to determine the legislative intent. Ibid.

Courts construe tax exemptions narrowly. Metpath, Inc. v. Dir., Div. of Taxation, 96 N.J. 147, 152 (1984). The taxpayer bears the burden of proving he is entitled to an exemption. See Container Ring v. Dir., Div. of Taxation, 1 N.J. Tax 203, 208 (Tax 1980) ("One who claims exemption from a tax must bring himself within the exemptions provision."), aff'd o.b., 4 N.J. Tax 527 (App. Div. 1981). "Statutory exemptions from taxation should be 'strictly construed against those invoking the exemption.'" Advance Hous., Inc., 215 N.J. at 566 (quoting Hunterdon Med. Ctr. v. Twp. of Readington, 195 N.J. 549, 569 (2008)). Any doubt as to eligibility should be resolved against the person or entity claiming the exemptions. Mal Bros. Contractor Co. v. Dir., Div. of Taxation, 124 N.J. Super. 55, 61 (App. Div. 1973). Applying the above standards, we discern no reason to reverse.

N.J.S.A. 54:4-3.30(a) authorizes a property tax exemption for a disabled veteran who meets five requirements: (1) be a citizen and resident of New Jersey; (2) "now or hereafter honorably discharged or released under honorable circumstances"; (3) "from active service, in time of war"; (4) "in any branch of the Armed Forces of the United States"; and (5) to be "declared by the [VA] or its successor to have a service-connected disability . . . declared by the [VA] or its successor to be a total or 100% permanent disability . . . sustained through enemy action, or accident, or resulting from disease contracted while in such active service . . . ." See also Wellington v. Twp. of Hillsborough, 27 N.J. Tax 37, 48 (Tax 2012). Appellant's failure to satisfy the "active service, in time of war" requirement is at issue here.

N.J.S.A. 54:4-8.10(a) provides that "'[a]ctive service in time of war' means active service by a person, while in the United States Armed Forces, at some time during one of the following periods." The statutes then lists the wars, conflicts, operations, missions, and timeframes during which a disabled veteran must have served in order to qualify for a property tax exemption. The statute includes two missions in which plaintiff would have needed to serve, given the timeframe of his active service between September 6, 1983 and September 5, 1986: the Grenada peacekeeping mission and the Lebanon peacekeeping

10

mission. N.J.S.A. 54:4-8.10(a). Although plaintiff listed these missions in his claim for a disabled veteran property tax exemption, he did not serve in either of them. Thus, per the statutory framework, plaintiff did not satisfy the "active service in time of war" requirement for entitlement to a disabled veteran's proprety tax exemption, and the Township properly denied his claim.

Nevertheless, plaintiff argues the non-inclusion of the Libya conflict in N.J.S.A. 54:4-8.10(a) impermissibly contravenes the purpose undergirding the disabled veterans' property tax exemption, which is to provide property tax relief to compensate veterans for their sacrifice, and allowance of the exemption should not be restricted to those who served in the delineated wars, conflicts, operations, and missions. However, we must defer to the Legislature's definition of "active service in time of war," as that body has sole authority to define that term by under the New Jersey Constitution. N.J. Const. art. VIII, § 1, ¶ 3. Judge Sundar touched on this argument in her prelude to analyzing plaintiff's constitutional arguments, but we will expand on the point here.

As we recognized in Opderbeck v. Midland Park Board of Education, "[i]t is not our job to engraft requirements [on a statute] that the Legislature did not include. It is our role to enforce the legislative intent as expressed through the words used by the Legislature." 442 N.J. Super. 40, 58 (App. Div. 2015)

11

(alterations in original) (quoting Lippman v. Ethicon, Inc., 222 N.J. 362, 388 (2015)).

More specifically, as the Court of Errors and Appeals long ago held with regard to another veterans' benefits statute:

> [g]enerally, statutes of the character under consideration would be liberally construed in favor of the citizen who volunteers his services in time of war, but it is not the judicial function to add beneficiaries to those specified in the statutes. The specification of who shall benefit and under what conditions is a legislative function. Our function is to construe the statute as written and to interpret the legislative intent, but we cannot under the guise of interpretation extend a statute to include persons not intended. We must regard the statutes as meaning what they say and avoid giving them any construction which would distort their meaning. We have no legislative authority and should not construe statutes any more broadly nor give them any greater effect than their language requires.
>
> [Adams v. Atlantic Cty., 137 N.J.L. 648, 652 (E. & A. 1948).]

N.J.S.A. 54:4-3.30(a), and by extension N.J.S.A. 54:4-8.10(a), have thus been strictly construed by our courts.

For example, in Fisher, we made it clear that a local tax assessor's adherence to the theater of operation definitions in N.J.S.A. 54:4-8.10(a) is mandatory, and the statute must be strictly construed, in line with the general principal that "[t]ax-exemption statutes are strictly construed against those

A-5878-17T1

claiming exemption because of the compelling public policy that all property should bear its fair share of the burden of taxation." 450 N.J. Super. at 618-19 (alteration in original) (quoting N.J. Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth, 144 N.J. 171, 177 (1996)).

The plaintiff in Fisher was a disabled veteran who served stateside during Operation Enduring Freedom,[1] purportedly in direct support of her unit stationed in a combat zone overseas. Id. at 613. She argued that "the series of amendments [to N.J.S.A. 54:4-8.10(a)] adding various conflicts over time was intended to expand to availability of relief for military missions and engagements, not just declared wars" and "the Legislature 'abandoned' the requirement the military service occur 'in expressly-defined geographic locales.'" Id. at 617. However, we squarely "reject[ed] the suggestion benefits were intended to be extended without regard to geographic limitations" as "inclusion of this geographic requirement [of N.J.S.A. 54:4-8.10(a)] was purposeful." Ibid.

Our decision in Township of Dover v. Scuorzo, 392 N.J. Super. 466 (App. Div. 2007), further illustrates the point. In the consolidated case, the Tax Court affirmed the grant of property tax benefits to an Army National Guard and an

_____

[1] Operation Enduring Freedom is included in N.J.S.A. 54:4-8.10(a).

Air Force Reserve veteran notwithstanding their service was for training purposes only and was not "active service in a time of war." Id. at 479-80. We reversed, recognizing, as Judge Sundar did, that the Legislature is vested with the authority to restrict eligibility for a disabled veteran's property tax exemption to those who served in active service during a time of war; other New Jersey veterans' benefits are restricted to those that served in active service; and "eligibility for most federal veterans' benefits requires completion of active service other than active duty for training in the National Guard or Reserves." Id. at 478-80. Thus, in both cases, we declined to extend a disabled veteran's property tax exemption to those not explicitly entitled to the same under N.J.S.A. 54:4-8.10(a).

Plaintiff cites Wellington for the principle that exposure to enemy action, weapons, and resistance in warfare is what warrants a property tax exemption for 100% disabled veterans. However, plaintiff fails to recognize the unique circumstances of that case and that the disabled veteran there satisfied the "active service in time of war" requirement. Id. at 52.

In Wellington, the plaintiff served in the Navy from September 1997 to September 1999. 27 N.J. Tax at 42. He was stationed with a Marine Corps unit during Operation Northern Watch/Southern Watch, and served as an advanced

14

laboratory technician in a military laboratory in San Diego.[2]  Ibid.  As a result of his duties, which involved handling chemical agents recovered from the battlefield in Iraq, he developed Multiple Sclerosis, and the VA declared him 100% permanently disabled.  Ibid.  Like the issue here, "[t]he critical question [was] whether [the] plaintiff served 'in the theater of operation' and 'in direct support of that operation' while handling chemical agents at the Navy laboratory in the United States."  Id. at 50.  The Tax Court judge answered that question in the affirmative.

Despite referencing the general principal from Darnell, clung to by plaintiff, that "[t]he purpose of the Constitutional provision allowing for the disabled veteran's exemption is to 'compensate veterans for the experiences of war and to encourage veterans to purchase property in this State[,]'" id. at 50-51 (quoting Darnell, 167 N.J. Super. at 18), a close reading of Wellington reveals the disabled veteran's property tax exemption was awarded not merely because the plaintiff was injured by enemy munitions, but because under the uniquely broad definition of the theater of operation of Operation Northern Watch and

[2]  Operation Northern Watch and Operation Southern Watch are included in N.J.S.A. 54:4-8.10(a).

Operation Southern Watch, the plaintiff had served within those theaters notwithstanding that he served stateside.  Id. at 48-49.  As the Tax Court stated:

> There is no dispute that [the] plaintiff did not serve in the Arabian Peninsula or the Persian Gulf during Operation Northern Watch/Southern Watch.  His military service took place in the United States.  N.J.S.A. 54:4–8.10(a), however, does not establish a strict geographic service requirement for veterans who served during Operation Northern Watch/Southern Watch.  According to the plain language of the statute, veterans "who served in the theater of operation, including in the Arabian peninsula and the Persian Gulf, and in direct support of that operation" are eligible for the exemption.  N.J.S.A. 54:4–8.10(a).  The theater of operation is defined to "include" the Arabian Peninsula and the Persian Gulf, but is not limited to those areas.  This is in contrast to other provisions of N.J.S.A. 54:4–8.10(a) which define other military conflicts to include only delineated geographic areas.

> [Id. at 49.]

It is thus clear that, contrary to plaintiff's assertions here, it was the plaintiff's satisfaction of the "active service in time of war" requirement in Wellington that entitled him to benefits.  Unlike Operation Northern Watch/Southern Watch, the Libya conflict is not a delineated a "time of war" under N.J.S.A. 54:4-8.10(a).  Plaintiff is not able to satisfy the "active service in time of war" requirement, and under the deference owed to legislation generally, and tax exemption statutes specifically, it is not our role to supersede the Legislature's authority.

16

Out of respect for the Legislature's clear intention to impose a geographic requirement within the "active service in time of war" definition in N.J.S.A. 54:4-8.10(a), and out of respect for our tripartite system of government, we must affirm the disallowance of plaintiff's claim for a disabled veteran's property tax exemption for failure to satisfy the "active service in time of war" requirement.

Plaintiff's constitutional arguments do not alter our conclusion. The Equal Protection Clause in the Fourteenth Amendment of the United States Constitution, Section One, provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." Plaintiff argues N.J.S.A. 5:4-8.10(a) violates the Equal Protection Clause because it treats disabled veterans of the Libya conflict differently than disabled veterans of the Lebanon peacekeeping mission. "[H]owever, the Equal Protection Clause does not require that all persons be treated alike. Rather, it requires that similar persons be treated similarly, and that people of different circumstances be treated differently." Garma, 14 N.J. Tax at 15. "[U]nless legislation creates an inherently suspect classification, a legislative classification will be presumed valid, even if it has the effect of treating some differently from others, so long as it bears some rational relationship to a permissible state interest." Ibid.

(alteration in original) (quoting Schneider v. City of East Orange, 196 N.J. Super. 587, 594 (App. Div. 1984)).

We have plainly held that "veterans' preference laws do not involve a suspect class." Darnell, 167 N.J. Super. at 21. As "a classification involving veterans does not result in 'invidious or irrational' distinctions among a state's residents; does not affect a suspect or semi-suspect class; and does not regulate fundamental rights . . . the classification which is the subject matter of this litigation need only be rationally related to a legitimate state interest to satisfy federal equal protection requirements." Garma, 14 N.J. Tax at 12 ("confirming" that veterans' classifications are "subject to rational basis review and not a higher level of scrutiny").

Rational basis review asks whether the statute is "rationally related to the achievement of a legitimate state interest." Barone v. Dep't of Human Servs., 107 N.J. 355, 365 (1987). The "rational basis test 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices,' and it does not empower the judiciary to act as a super-legislature, judging the wisdom or desirability of legislative policy." A.A. v. State, 384 N.J. Super. 481, 496 (App. Div. 2006) (quoting Heller v. Doe, 509 U.S. 312, 319 (1993)). Rather, a tax statute passes constitutional muster and overcomes allegations of equal

protection violations if it has a rational basis, that is the "state policy furthered by the difference in treatment is 'plausible,'" and the "classification . . . [is] justifiable 'on any reasonably conceivable state of facts[.]'" <u>Verizon New Jersey Inc. v. Borough of Hopewell</u>, 26 N.J. Tax 400, 424-25 (Tax 2012) (first quoting <u>Nordlinger v. Hahn</u>, 505 U.S. 1, 11 (1992); then quoting <u>Armour</u>, 566 U.S. at 681).

Judge Sundar correctly recognized that "[p]recedent has uniformly held that statutes which treat veterans differently for purposes of certain benefits, pass the rational basis muster." <u>Bentz</u>, 30 N.J. Tax at 549 (citing <u>Ballou v. Dep't of Civ. Serv.</u>, 75 N.J. 365 (1978); <u>Fischer</u>, 11 Vet. App. at 123-24). Further, the judge identified numerous potential legislative motivations that would explain the non-inclusion of the Libya conflict from N.J.S.A. 54:4-8.10(a), which were "'a reasonably conceivable state of facts' [providing] 'a rational basis for the classification.'" <u>Ibid.</u> (quoting <u>Armour</u>, 566 U.S. at 681). The judge stated, for example:

> It may be that our Legislature did not consider the conflict with Libya for purposes of including it in [N.J.S.A. 54:4-8.10(a)] because it was not federally identified as a war or as an emergency due to the short term, the quantum of armed personnel, costs or damages involved, or because the 1986 [Executive Order] imposed purely economic sanction or embargoes, or because under federal law, it never

19

elevated to the level of a war for purposes of providing veteran benefits.

[Ibid.]

Lastly, it is clear from the Legislature's continued amendment to N.J.S.A. 54:4-8.10(a), see L. 1991, c. 390, § 7; Statement to Assembly Veterans, Military Affairs and Gaming Comm., Assembly No. 485, L. 1995, c. 406, to update the specified war theaters and service dates in lock-step with federal regulation, see 38 U.S.C. § 101; 38 C.F.R. § 3.2, that the Legislature has not abdicated its constitutionally delegated duty. The Legislature's non-inclusion of the Libya conflict was intentional and purposeful, and that, by virtue of mirroring the federal regulations, demonstrates rationality.

Furthermore, the Libya conflict is not included in other New Jersey veterans' benefit statutes, which generally include the same periods included in N.J.S.A. 54:4-8.10(a), demonstrating that the Legislature's action cannot be said to be arbitrary or without a rational basis. See N.J.S.A. 11A:5-1 (relating to Veterans' Preference in Civil Service); N.J.S.A. 18A:66-2 (relating to pensions); N.J.S.A. 43:15A-6 (same); N.J.S.A. 43:16A-11.7 (same); Scuorzo, 392 N.J. Super. at 478-80 (finding these non-tax veteran benefit statutes as support for strict interpretation of N.J.S.A. 54:4-8.10(a)).

As Judge Sundar stated, the "burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." Bentz, 30 N.J. Tax at 550 (quoting Armour, 566 U.S. at 681); see Garma, 14 N.J. Tax at 12 (a challenge to a tax statute requires "the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes" (quoting Regan v. Taxation with Representation, 461 U.S. 540, 547 (1983))).  Plaintiff has failed to attack any of the potential, plausible bases for our Legislature's non-inclusion of the Libya conflict in N.J.S.A. 54:4-8.10(a).  Notably, he has failed to produce any evidence, or even raise the argument, that the Legislature intentionally discriminated against him.  See Chadwick 99 Assocs. v. Dir., Div. of Taxation, 23 N.J. Tax 390, 418 (Tax 2007) ("[I]t is only intentional discrimination that violates equal protection, and . . . what is invalid is singling out an individual and treating that individual differently than other persons of the same class.").  Thus, plaintiff's challenge to N.J.S.A. 54:4-8.10(a) under the Equal Protection Clause fails.

A-5878-17T1

Plaintiff's challenge to the statute under the Supremacy Clause, Article Six, Paragraph Two of the United States Constitution,[3] also fails. The Supremacy Clause generally establishes that the federal constitution and federal laws take precedence over state constitutions and state laws. However, the superseding effect of federal laws is limited to only where Congress has expressly stated that state law is pre-empted, Congress intends that federal law occupy a given field, or the state law actually conflicts with federal law, for example, if compliance with both state law and federal law is impossible or if the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." California v. ARC America Corp., 490 U.S. 93, 100 (1989) (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)).

"Only the State (via its local government) imposes, or exempts from imposition, local property tax. The federal government does not." Bentz, 30 N.J. Tax at 547; see also Nordlinger, 505 U.S. at 30; Lehnhausen v. Lake Shore

---

[3] The Supremacy Clause provides:

> This Constitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding.

Auto Parts Co., 400 U.S. 356, 359 (1973). And, "[b]ecause Congress is not presumed to desire displacement of 'the historic police powers of the States,' preemption must be proved by 'clear and manifest evidence' of such an intent." Whirlpool Props., Inc. v. Dir., Div. of Taxation, 25 N.J. Tax 519, 535 (App. Div. 2010) (citations omitted) (quoting Franklin Tower One, L.L.C. v. N.M., 157 N.J. 602, 615 (1999)).

Thus, as Judge Sundar held, "definitions for purposes of local property tax are not controlled, or overridden by, federal statutes relating to veterans['] compensation or benefits." Bentz, 30 N.J. Tax at 547 (citing Duncan, 29 N.J. Tax at 534) (federal definitions or interpretations of "direct support" are not controlling for purposes of N.J.S.A. 54:4-3.30, and although N.J.S.A. 54:4-3.30 relies upon the VA for a determination of disability, it does not "defer to a technical definition or term of art prescribed by military regulation or otherwise"). Therefore, the Supremacy Clause is not even implicated, let alone violated here.

To the extent we have not specifically addressed any of plaintiff's remaining arguments, we conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5878-17T1