929 A.2d 1111 (2007)
395 N.J. Super. 502
Roslyn QUARTO and Judith Prichason, Appellants,
v.
Maureen ADAMS, in her official capacity as Acting Director of the New Jersey Department of the Treasury, Division of Taxation; and Stuart Rabner, in his official capacity as Attorney General of New Jersey, Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 2007.
Decided August 9, 2007.
*1112 Lawrence S. Lustberg, Newark, argued the cause for appellants (Gibbons, attorneys and as cooperating attorneys for the ACLU-NJ; Mr. Lustberg, Emily B. Goldberg, Edward L. Barocas and Jeanne LoCicero, on the brief).
Patrick DeAlmeida, Assistant Attorney General, argued the cause for respondents (Stuart Rabner, Attorney General, attorney; Mr. DeAlmeida and Stephanie Beaty, Deputy Attorney General, on the brief).
Before Judges STERN, A.A. RODRÍGUEZ and SABATINO.
The opinion of the court was delivered by
SABATINO, J.A.D.
The transitional issue presented in this appeal is whether the Division of Taxation ("the Division") is compelled by Lewis v. Harris, 188 N.J. 415, 908 A.2d 196 (2006), and the subsequent enactment of New Jersey's Civil Union Act, L. 2006, c. 103 ("the Civil Union Act"), N.J.S.A. 37:1-28 to -36, to permit a same-sex couple, married in another jurisdiction before that statute's February 19, 2007 effective date, to file a joint New Jersey gross income tax return for income they earned in calendar year 2006. Appellants, who are New Jersey residents, were united in a same-sex marriage in Canada in 2003. The Acting Director of the Division denied their request to file a joint New Jersey tax return for their 2006 earnings.
Although appellants are entitled to declaratory relief concerning future tax years, which is unopposed by the State respondents, we hold that the Division is not required to treat appellants' 2006 income as joint income. We are satisfied that the Acting Director's determination was justifiable, and that the Division may utilize a reasonable transition period to conform its forms and procedures to the constitutional and statutory principles espoused in Lewis v. Harris, supra, and in the Civil Union Act. We also note that the Acting Director's determination comports with established administrative practices of looking to the familial status of wage earners, for taxation purposes, during the *1113 calendar year that their income was earned.

I.
Appellants, Roslyn Quarto and Judith Prichason, are a same-sex couple who reside with one another in New Jersey. They exchanged vows in a marriage ceremony in North Vancouver, British Columbia, Canada on July 28, 2003.[1] Appellants thereafter registered as a domestic partnership in New Jersey on July 10, 2004, the day that the Domestic Partnership Act, N.J.S.A. 26:8A-1 to -13, took effect. Both appellants worked and earned income during the course of calendar year 2006.
As residents of New Jersey, appellants are each obligated to file a New Jersey gross income tax return for earnings above the minimum amounts prescribed by statute. See N.J.S.A. 54A:8-3.1. Unless the filing deadline is extended, such State tax returns for persons who are in a calendar-year tax cycle are to be filed on or before April 15 of the year following the calendar year in which the income was earned.[2]N.J.S.A. 54A:8-1(a).
Appellants desire to file a joint New Jersey gross income tax return for their 2006 earnings. In anticipation of the April 17, 2007 filing deadline, they sought advice from the American Civil Liberties Union of New Jersey ("ACLU-NJ"). On December 21, 2006, the Legal Director of the ACLU-NJ wrote the Attorney General and the Governor's Chief Counsel, on behalf of appellants and other similarly-situated same-sex couples who had been married in Canada or Massachusetts, requesting clarification of the legal status of such couples in New Jersey.
Subsequently, on February 16, 2007, the Attorney General issued Formal Opinion No. 3-2007.[3] The Formal Opinion addresses how the Civil Union Act, which was adopted following the Supreme Court's opinion in Lewis v. Harris, supra, 188 N.J. 415, 908 A.2d 196, would affect same-sex marriages, civil unions, or the equivalent relationships previously formed under the laws of other states and foreign jurisdictions. Noting that the Civil Union Act would become effective on February 19, 2007, the Attorney General advised that "government-sanctioned, same-sex relationships validly established under the laws of other States and foreign nations will be valid in New Jersey beginning on February 19, 2007, either as civil unions or domestic partnerships." Id. at 1. However, "[t]he name of the relationship selected by other jurisdictions . . . will not control its treatment under New Jersey law. Rather, it is the nature of the rights conferred by another jurisdiction that will determine how a relationship will be treated under New Jersey law." Ibid.
Consequently, Formal Opinion No. 3-2007 observed that "same-sex relationships from other jurisdictions that most closely approximate a New Jersey civil union . . . *1114 will be treated as civil unions under our law[,]" and that "relationships . . . that most closely approximate New Jersey domestic partnerships" would likewise be treated in our State as domestic partnerships. Id. at 2. The Formal Opinion specifically recognizes "that same-sex marriages established under the current laws of . . . Canada," among other jurisdictions, "will be valid in New Jersey and treated as civil unions in our State." Ibid.
The same day that Formal Opinion No. 3-2007 was released, the Legal Director of the ACLU-NJ again sought guidance from the State on the specific question of whether same-sex couples such as appellants, previously united in another jurisdiction, could file joint state income tax returns for their 2006 income. The inquiry was referred to the Acting Director of the Division. The Acting Director then spoke with the Legal Director of ACLU-NJ on February 21, 2006. Guided by Formal Opinion No. 3-2007, she informed him that same-sex couples such as appellants could not file joint New Jersey tax returns for their 2006 income, because their legal status was not recognized in our State until February 19, 2007, which was after their 2006 income had already been earned. Following that conversation, the appellants presented an application for emergent relief with our court, seeking an emergent stay of the Acting Director's oral determination. We initially deferred action on the emergent application while appellants sought an emergent administrative stay from the Acting Director.
The stay was denied by the Acting Director in a written decision on March 30, 2007. In denying that administrative stay, the Acting Director observed:
[b]ecause a couple's eligibility to file a joint New Jersey gross income tax return depends on their marital status during the tax year for which the return is filed, and not on the couple's marital status at the time that they file the return . . . [appellants] were not eligible to file a joint New Jersey gross income tax return for tax year 2006.
The Acting Director informed appellants that they were free to file a 2006 joint return, but that such a return was likely to be audited in light of the Division's contrary legal position and the Attorney General's guidance in Formal Opinion No. 3-2007. However, in her letter and thereafter through her counsel, the Acting Director assured appellants and other similarly-situated same-sex couples that they may begin filing "joint gross income tax returns in New Jersey for tax year 2007 and beyond."
Appellants then filed a notice of appeal with our court, naming as respondents the Acting Director and the Attorney General in their official capacities ("respondents"). Soon thereafter, respondents moved to dismiss the appeal for lack of jurisdiction, or alternatively, to transfer this matter to the Tax Court. We denied respondents' motion and then considered appellants' continued application for an emergent stay, which we also denied. However, we accelerated the appeal, sua sponte, expediting the filing of merits briefs and oral argument.
While the litigation was pending, appellants each timely filed an application with the Division for an automatic six-month extension of time for filing their 2006 New Jersey gross income tax returns. Consequently, their returns presently do not have to be filed until October 15, 2007.
Appellants have supplemented the record to include a tax analysis by their accountant. The accountant compared the New Jersey gross income taxes that appellants would owe if they, hypothetically, filed a 2006 joint return (using the state tax rates for married couples) with what *1115 they would owe in combination if they filed separate 2006 returns. The comparison revealed that appellants would owe $411 more in 2006 New Jersey gross income taxes if, hypothetically, they file jointly rather than individually.[4] Despite this apparent financial disadvantage, appellants still wish to file a joint return for other personal reasons.
Appellants raise several constitutional issues. Most fundamentally, they argue that the Acting Director's decision has deprived them "of a right afforded to similarly[-]situated heterosexual couples," in alleged violation of Lewis v. Harris and Article I, Paragraph 1 of the New Jersey Constitution. In particular, appellants maintain that (1) under Lewis v. Harris, they are presently entitled to all rights and benefits afforded to heterosexual married couples; (2) the Division's refusal to allow them to file a joint 2006 tax return violates principles of equal protection; (3) there is no legitimate public need to deprive same-sex couples the immediate ability to file joint income tax returns; and (4) the Acting Director's decision subjects them to "constitutional and emotional harm that can only be mitigated by" a reversal of the administrative decision.
In opposition, respondents do not contest any of the material facts set forth by appellants, except for appellants' claims of emotional or other inchoate harm, which respondents contend should be minimal or non-existent since tax returns are, by law, confidential. Even assuming that such short-term harm to appellants exists, respondents contend that the Acting Director's administrative decision, phasing in the implementation of Lewis v. Harris and the Civil Union Act, comports with the Constitution.
We now consider these arguments.

II.
The issues before us, while undoubtedly possessing constitutional facets, essentially come down to matters of timing.[5] By virtue of their Canadian marriage now recognized in our State as a civil union, appellants want the Division to treat their past earnings from 2006 as joint income. Respondents, on the other hand, will permit appellants to file a joint tax return for what they earn this calendar year and thereafter, but not sooner.
We first look to Lewis v. Harris itself for guidance on these timing issues. In Lewis v. Harris, the Supreme Court declared that equal protection principles under Article I, Paragraph 1 of the State Constitution require that "committed same-sex couples [in New Jersey] must be afforded on equal terms the same rights and benefits enjoyed by married opposite-sex couples." Lewis v. Harris, supra, 188 N.J. at 457, 908 A.2d 196. The Court provided the elected branches of State Government two alternative methods of achieving such legal equality: (a) the adoption of legislation authorizing same-sex marriages or (b) the enactment of civil *1116 union laws conferring equivalent rights upon committed same-sex parties as those accorded to married couples. Id. at 457-60, 908 A.2d 196. In offering these two options as a means to achieve constitutional compliance, the Court respected the other branches' policy-making prerogatives. Id. at 460, 908 A.2d 196 ("Our role here is limited to constitutional adjudication, and therefore we must steer clear of the swift and treacherous currents of social policy when we have no constitutional compass with which to navigate.").
The majority opinion in Lewis v. Harris was acutely sensitive to the dramatic historical, political and social changes associated with the legal recognition of same-sex unions in our State. Consequently, the Court anticipated that the adaptation of our laws and regulations to achieve parity for gay and lesbian couples in accord with the constitutional mandates of Lewis v. Harris would necessarily take time and considerable effort, both legislatively and, by natural inference, administratively.
To that end, the majority in Lewis v. Harris did not insist that its holdings be carried out immediately. Rather, the Court afforded the Legislature and the Executive Branch[6] 180 days to enact statutory amendments to achieve those goals of constitutional parity beyond the less sweeping reforms previously accomplished in 2004 by the Domestic Partnership Act. See id. at 463, 908 A.2d 196.
Specifically on this subject of timing, Lewis v. Harris instructed:
The constitutional relief that we give to plaintiffs cannot be effectuated immediately or by this Court alone. The implementation of this constitutional mandate will require the cooperation of the Legislature. To bring the State into compliance with Article I, Paragraph 1 so that plaintiffs can exercise their full constitutional rights, the Legislature must either amend the marriage statutes or enact an appropriate statutory structure within 180 days of the date of this decision.

[Ibid. (emphasis added).]
The Court's opinion was issued on October 25, 2006, thereby giving the other branches until April 22, 2007 to enact curative legislation.
The Legislature and the Governor accordingly responded, through the enactment of the Civil Union Act, L. 2006, c. 103, on December 21, 2006. The statute reflects a policy choice to comply with Lewis v. Harris by establishing same-sex civil unions, instead of amending the marriage laws to allow homosexual couples to wed. In particular, the Legislature declared in its general findings that "[t]hose rights and benefits afforded to same-sex couples under the `Domestic Partnership Act' should be expanded by the legal recognition of civil unions between same-sex couples in order to provide these couples with all the rights and benefits that married heterosexual couples enjoy[.]" N.J.S.A. 37:1-28(d).
Among other things, the Civil Union Act specifically requires equivalent "legal benefits, protections and responsibilities" for civil union couples as are afforded married couples, including "laws relating to taxes imposed by the State. . . ." N.J.S.A. 37:1-32(n).[7] The section of the statute in which this clause appears is introduced by *1117 a catch-all provision reciting that the specific benefits, protections and responsibilities enumerated in the statute "shall not be construed to be an exclusive list. . . ." N.J.S.A. 37:1-32.
Notably, the Civil Union Act pragmatically recognized the administrative need of State and local officials, as well as of private parties, to have some time to prepare to carry out its far-ranging reforms. In particular, the law directed that it "shall take effect on the 60th day after [its] enactment . . . but the Commissioner of Health and Senior Services and the Director of the Administrative Office of the Courts may take such anticipatory administrative action in advance as shall be necessary for the implementation of the [A]ct." L. 2006, c. 103, § 96. That sixtieth day was February 19, 2007.
Timing was also an important aspect of the Attorney General's Formal Opinion 3-2007, which guided the Acting Director in dealing with appellants' circumstances. The Formal Opinion addressed the implementation of the Civil Union Act for same-sex couples who had been officially united in other jurisdictions. In particular, the Formal Opinion instructs State agencies in the enforcement of N.J.S.A. 37:1-34, which reads:
A civil union relationship entered into outside of this State, which is valid under the laws of the jurisdiction under which the civil union was created, shall be valid in this State.
[N.J.S.A. 37:1-34.]
Formal Opinion No. 3-2007 accordingly canvassed the marriage, domestic partnership, and civil union laws of other states and nations, including Canada. It then delineated which of those relationships qualified for cognate treatment in New Jersey as civil unions. The Formal Opinion applies the effective date of the Civil Union Act, February 19, 2007, by deeming such qualified same-sex relationships from other jurisdictions as valid civil unions in New Jersey, "beginning on February 19, 2007." Formal Opinion No. 3-2007, supra, at 1.
Although we as a court are not bound to adopt the Attorney General's Formal Opinion as a correct statement of the law, it is nonetheless entitled to a degree of deference, in recognition of the Attorney General's special role as the sole legal adviser to most agencies of State Government, including the Treasury Department and the Division of Taxation. See N.J.S.A. 52:17A-4(e); see also Peper v. Princeton Univ. Bd. of Trs., 77 N.J. 55, 70, 389 A.2d 465 (1978); Bd. of Educ. of W. Windsor-Plainsboro Reg'l Sch. Dist. v. Bd. of Educ. of Delran, 361 N.J.Super. 488, 494, 825 A.2d 1215 (App.Div.2003), certif. denied, 178 N.J. 454, 841 A.2d 92 (2004). Moreover, the Formal Opinion is consistent with the terms and stated objectives of the Civil Union Act.
In essence, appellants contend that they were entitled to full parity with married heterosexual couples on matters of taxation the moment that Lewis v. Harris was issued by the Supreme Court on October 25, 2006. They further maintain that they are not seeking retroactive application of either Lewis v. Harris or of the Civil Union Act. Rather, they argue that they are presently entitled, by constitutional precedent and by statute, to file a joint New Jersey tax return for 2006, no differently than their heterosexual peers who were married[8] on or before December 31, 2006.
*1118 Respondents do not resist appellants' entitlement to equal treatment under the laws as that right was judicially construed in Lewis v. Harris. Indeed, at oral argument before us, respondents indicated that they had no objection to the entry of a declaratory judgment stating that appellants have a prospective entitlement to file a joint gross income tax return, if they so choose, for as long as they remain partners in a civil union. What the respondents differ about is simply how and when that right may be implemented.
These timing considerations lead us to the specific context of our system of state taxation. Under New Jersey law, most individuals' taxes are calculated on an annual basis ending on December 31. See N.J.S.A. 54A:8-1(a). New Jersey has synchronized its joint filing procedures with federal procedures utilized by the Internal Revenue Service. N.J.S.A. 54A:8-3(a); see also 26 U.S.C.A. §§ 441, 6072(a) (generally applying a calendar-year treatment of earnings for federal income tax purposes and an April 15 filing deadline for federal tax returns).
As a matter of the Division's long-standing administrative practice and in concert with the state's synchronization with federal law, New Jersey taxpayers must have been married in the year that their income was earned in order to qualify for joint filing status as married persons. See N.J.S.A. 54A:8-3.1(c); 26 U.S.C.A. §§ 6013(d)(1)(A), 7703(a). The published instructions for the 2006 Form NJ-1040 confirm this practice:
You may use the filing status "Married, filing joint return" or "Married filing separate return" only if you and your spouse were married on the last day of the tax year.
This practice has clear administrative benefits. The Division sensibly treats the taxpayer, the taxpayer's filing status, and the taxpayer's income as temporally coextensive units defined by the taxable year. Thus, if a man and woman married one another on February 19, 2007, that couple would not be permitted to file a joint New Jersey gross income tax return for their earnings in calendar year 2006, even if the return were filed on or after the date of their marriage. Because appellants' Canadian marriage was not legally recognized by statute in New Jersey as a civil union until February 19, 2007, appellants are being treated no differently than a truly similarly-situated heterosexual married couple. See Greenberg v. Kimmelman, 99 N.J. 552, 568, 494 A.2d 294 (1985).
Appellants insist that they are being forced to suffer an intolerable constitutional deprivation during the State's transition, following Lewis v. Harris, to a new era in which committed same-sex couples are accorded the same substantive rights and obligations as heterosexual married couples. We discern no such deprivation here that warrants an injunctive remedy.
The Supreme Court was quite explicit in Lewis v. Harris that the Legislature, and, as we read it, the rest of government and our State as a whole, should have up to 180 days to implement its holdings and to make appropriate changes in laws, rules, forms, and procedures. Such a brief transition period is not, in and of itself, unprecedented or constitutionally nefarious. See, e.g., Lance v. McGreevey, 180 N.J. 590, 593, 853 A.2d 856 (2004) (holding that contract bond revenues could not be constitutionally used to fund general State expenses but applying the Court's holding prospectively in order to give the Legislature time to incorporate the ruling into its next annual budget cycle); Abbott v. Burke, 136 N.J. 444, 446-48, 643 A.2d 575 (1994) (declaring New Jersey's Quality Education Act unconstitutional but declining to enter any implementing orders at the *1119 time of its ruling, instead retaining jurisdiction and providing the State with a timeline for compliance); S. Burlington County NAACP v. Township of Mt. Laurel, 67 N.J. 151, 174, 191-92, 336 A.2d 713 (1975) (concluding that every municipality must "make realistically possible an appropriate variety and choice of housing[,]" but providing municipalities ninety days to revise their zoning plans accordingly); Jackman v. Bodine, 43 N.J. 453, 473-478, 205 A.2d 713 (1964) (finding Article IV, § 1, § 2, ¶ 1, & § 3, ¶ 1 of the 1947 State Constitution, concerning apportionment of the Legislature, invalid under the Federal Constitution but specifying a time frame for the holding of a Constitutional Convention to cure the invalidity prior to the Court taking other potential actions).
Appellants maintain that the respondents overstate the administrative burdens of complying with Lewis v. Harris, and that the number of same-sex couples who may want to file joint tax returns for calendar year 2006 is not large or unmanageable. That may or may not be true. We also note that the Division appears to have already modified several of its tax forms, including W-4 withholding forms, to accommodate taxpayers with civil union status.[9]
Even if the Division can adapt quickly to the wholesale changes in our laws in the wake of Lewis v. Harris and it is theoretically feasible for the Division to accept joint tax filings for 2006 from same-sex couples who were united elsewhere in previous years, that circumstance does not eliminate other administrative problems caused by the transition. For instance, because such same-sex couples could not have filed joint New Jersey returns in prior years, their employers ordinarily would not have withheld appropriate amounts of taxes, so their prior W-4 forms would have been substantially incorrect. Additionally, there is the troublesome possibility that other same-sex couples in non-New Jersey legal unions that predate the Civil Union Act's effective date would want to submit amended tax returns for pre-2006 tax years. Although appellants personally disavow any desire to file such amended returns for tax years prior to 2006, our courts, in the spirit of equal protection, could not foreclose that possibility for other similarly-situated taxpayers. See N.J.S.A. 54A:9-8(a) (allowing, generally, taxpayers to amend their State returns within three years of the original filing or within two years from the date that the tax was paid). Carried to their logical conclusion, appellants' legal arguments, if accepted by this court, could open the door to many taxpayers looking to alter their prior tax returns, at least in instances (unlike the present case) where there may be some financial incentive to do so. We do not read Lewis v. Harris to require such potential retroactive disruption.[10]
At bottom, this case only involves a short-term transitional issue of implementation.[11] *1120 We are not persuaded that the respondents have acted in any way contrary to the dictates of Lewis v. Harris or the Civil Union Act by deferring appellants' chance to file a joint gross income tax return until next year. We do not perceive that respondents have treated appellants unfairly or disrespectfully. Instead, we perceive that respondents have acted in good faith and with reasonable dispatch in implementing a new set of laws, faithful to the directives of the Supreme Court and of our elected branches of government. At most, appellants are entitled to a declaratory ruling that, unless the law otherwise changes, New Jerseyans in same-sex civil unions will be entitled, if they wish, to file joint income tax returns starting with their 2007 income.[12] No further relief beyond that is warranted.
The decision of the Acting Director of the Division is
affirmed.
STERN, P.J.A.D., concurring.
If a heterosexual couple residing in New Jersey was married in another state or nation before December 31, 2006, that couple could file a joint New Jersey gross income tax return for that calendar year. The majority holds, however, that a same-sex couple residing in New Jersey, lawfully married outside the State on the same date, could not. In light of Lewis v. Harris, 188 N.J. 415, 908 A.2d 196 (2006), I find this to be a denial of equal protection under the New Jersey Constitution. See N.J. Const. art. I, ¶ 1. As I see it, therefore, the question before us becomes whether plaintiffs are entitled to more than the grant of declaratory relief ordered by the majority.
The issue in Lewis v. Harris, 188 N.J. 415, 908 A.2d 196 (2006), was:
whether persons of the same sex have a fundamental right to marry that is encompassed within the concept of liberty, guaranteed by Article I, Paragraph 1 of the New Jersey Constitution [or] . . . whether Article I, Paragraph I's equal protection guarantee requires that committed same-sex couples be given on equal terms the legal benefits and privileges awarded to married heterosexual couples and, if so, whether that guarantee also requires that the title of marriage, as opposed to some other term, define the committed same-sex legal relationship.
[Id. at 422-23, 908 A.2d 196.]
The Court held that "denying rights and benefits to committed same-sex couples that are statutorily given to their heterosexual *1121 counterparts violates the equal protection guarantee of Article I, Paragraph 1." Id. at 423, 908 A.2d 196. It then gave the Legislature two means by which to remedy the violation:
To comply with the equal protection guarantee of Article I, Paragraph 1 of the New Jersey Constitution, the State must provide to committed same-sex couples, on equal terms, the full rights and benefits enjoyed by heterosexual married couples. The State can fulfill that constitutional requirement in one of two ways. It can either amend the marriage statutes to include same-sex couples or enact a parallel statutory structure by another name, in which same-sex couples would not only enjoy the rights and benefits, but also bear the burdens and obligations of civil marriage. If the State proceeds with a parallel scheme, it cannot make entry into a same-sex civil union any more difficult than it is for heterosexual couples to enter the state of marriage. It may, however, regulate that scheme similarly to marriage and, for instance, restrict civil unions based on age and consanguinity and prohibit polygamous relationships.
[Id. at 463, 908 A.2d 196 (footnote omitted).]
In implementing its holding, the Court directed that:
The constitutional relief that we give to plaintiffs cannot be effectuated immediately or by this Court alone. The implementation of this constitutional mandate will require the cooperation of the Legislature. To bring the State into compliance with Article I, Paragraph 1 so that plaintiffs can exercise their full constitutional rights, the Legislature must either amend the marriage statutes or enact an appropriate statutory structure within 180 days of the date of this decision.
[Ibid.][1]
I see nothing in Lewis, which focuses on couples seeking the rights of marriage in New Jersey, that controls the issue before us. Rather, the issue involved in this case is when New Jersey citizens already lawfully married out-of-state obtained the benefits of their civil union in New Jersey.
The majority cogently details the legal, practical and administrative reasons why delayed implementation of the right acknowledged in Lewis was necessary and constitutionally acceptable. I agree with its analysis concluding that the effective date of New Jersey's civil union act, L. 2006, c. 103, was February 19, 2007 and that the same-sex couple in this case is entitled to be recognized as being in a civil union as of that date. However, I have reservations about the majority's holding with respect to plaintiffs' right to file a joint return for the tax year 2006, because the partners here seek to file a return that was not due until April 17, 2007, after the civil union act became effective.[2] *1122
Despite the different question before us, I believe that Lewis impacts on the issue of implementation and, like my colleagues, am required as an intermediate appellate judge to apply Lewis as I understand its holding. Lewis announced a constitutional principle in existence on the date of decision. It nevertheless recognized the Legislature's shared exercise of governmental responsibility for purposes of implementation and provided a remedy for the equal protection violation that was made prospective upon the Legislature's action. Because the 180-day period discussed in Lewis did not expire until the calendar year 2007 and the Legislature did not act until after the 2006 tax year concluded, I read the opinion as suggesting that the Legislature could preclude a same-sex couple already legally married in another jurisdiction from filing a joint New Jersey income tax return for 2006, even when the return was not due until after the effective date of the statute that recognized their relationship as a civil union.
I therefore concur in the judgment.
NOTES
[1] It is undisputed that appellants' same-sex marriage was valid under the laws of Canada.
[2] Because April 15, 2007 happened to fall on a Sunday and the following day, April 16, was a legal holiday in Washington, D.C., the State tax filing deadline this year was Tuesday, April 17, 2007, coextensive with the federal tax deadline. N.J. Tax Calendar, Jan. 1, 2007  Dec. 31, 2007 at 4, available at http:// www.state.nj.us/treasury/taxation/pdf/ chronolist07.pdf; IRS, Questions and Answers  April 17 Deadline, available at http:// www.irs.gov/newsroom/article/0,,id=167195, 00.html.
[3] The Formal Opinion is topically entitled, in full, "Recognition in New Jersey of Same-Sex Marriages, Civil Unions, Domestic Partnerships and Other Government-Sanctioned, Same-Sex Relationships Established Pursuant to the Laws of Other States and Foreign Nations." Ibid.
[4] Evidently this outcome is explained in part by the fact that one of the two appellants earns substantially more than her partner, thereby placing the other partner's income in a higher tax bracket, even at the marital rates.
[5] As a threshold matter, we are satisfied that appellants, despite the lack of any adverse financial impact from requiring them to file separate tax returns for their 2006 earnings, have sufficient standing to pursue judicial relief for the State's alleged violations of their constitutional rights. The potential harm to appellants and other similarly-situated taxpayers, in being deprived of equal treatment under our laws, is genuine and "evidence[s] a sufficient stake and real adverseness" to respondents. See Crescent Park Tenants Ass'n v. Realty Equities Corp., 58 N.J. 98, 107, 275 A.2d 433 (1971).
[6] Although the Court does not expressly mention in Lewis v. Harris the Governor's constitutional roles in the passage and enforcement of legislation, those roles are clearly implicated by the opinion.
[7] The statute contains other incidental references to taxation issues, including the State tax treatment of alimony, see N.J.S.A. 2A:34-23(b)(12), and equitable distribution, see N.J.S.A. 2A:34-23.1(j).
[8] It is undisputed that appellants' status as domestic partners under N.J.S.A. 26:8A-1 to -13 did not entitle them to file a joint tax return.
[9] See, e.g., State of New Jersey Division of Taxation, Employees Withholding Allowance Certificate (Form NJ-W4), available at http:// www.state.nj.us/treasury/taxation/pdf/otherforms/giter/njw4.pdf.
[10] Although it is, of course, not binding upon us, our research indicates that no other state that has recognized same-sex marriages or civil unions, either by case law or statute, has required a same-sex couple's earnings in prior calendar years to be treated as joint income. See, e.g., Mass. Dep't of Revenue Technical Info. Release 04-17, 2004 Mass. Tax Lexis 32 (July 7, 2004) (wherein the Massachusetts Department of Revenue instructed that "Massachusetts will recognize valid same-sex marriages for taxable years that end on or after May 16, 2004 and will not recognize same-sex marriages for taxable years that end before May 16, 2004").
[11] Appellants raise a host of potentially analogous issues involving probate, divorce, equitable distribution of property, and the evidential privilege for confidential communications. We reach none of those issues and decide only the narrow taxation issue before us.
[12] We recognize that, as it is presently codified, N.J.S.A. 54A:8-3.1(b) requires that married persons who file separate federal income tax returns with the Internal Revenue Service must also file "separate returns for New Jersey income tax purposes." Ibid. However, as a matter of federal law, the Federal Defense of Marriage Act, 1 U.S.C.A. § 7, prohibits same-sex couples from filing federal joint income tax returns. Although that circumstance would seem to preclude appellants from filing a joint New Jersey tax return for their 2007 income, we were advised at oral argument that respondents are evaluating the continued vitality of N.J.S.A. 54A:8-3.1(b) in light of Lewis v. Harris and the supervening enactment of the Civil Union Act. In any event, we need not reach the constitutionality of N.J.S.A. 54A:8-3.1(b) or whether it is impliedly repealed or limited by the Civil Union Act. Instead, we accept respondents' representation that appellants will be permitted to file a joint state return for their 2007 income, assuming, of course, that they remain in their civil union and no other statutory or constitutional changes occur.
[1] The dissenting justices agreed with the majority as to the equal protection violation but found "no principled basis . . . on which to distinguish those rights and benefits from the right to the title of marriage[.]" The dissent therefore recognized that the same-sex couples were entitled to be "married." Id. at 464, 908 A.2d 196 (Poritz, C.J., concurring and dissenting). The dissenters also concluded that there was a due process right to a same-sex marriage. Ibid.
[2] I am in full agreement with the majority that the parties must be lawfully married in the year 2006 to file a joint return for that year. Because the ability to file a joint return did not occur until February 19, 2007, I further agree, without reservation, that the parties cannot seek to retroactively amend their prior years' returns.