NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3772-19T2

IN THE MATTER OF
OFFICER GREGORY
DIGUGLIELMO AND
NEW JERSEY INSTITUTE
OF TECHNOLOGY.

_____

APPROVED FOR PUBLICATION

October 15, 2020

APPELLATE DIVISION

Argued September 29, 2020 – Decided October 15, 2020

Before Judges Sabatino, Gooden Brown and DeAlmeida.

On appeal from an interlocutory order of the New Jersey Public Employment Relations Commission, P.E.R.C. No. 2020-004.

Leonard S. Spinelli argued the cause for appellant New Jersey Institute of Technology (Genova Burns, LLC, attorneys; Jennifer P. Roselle and Leonard S. Spinelli, of counsel and on the briefs).

Amie E. Dicola argued the cause for respondent Officer Gregory DiGuglielmo (Fusco & Macaluso Partners, LLC, attorneys; Amie E. Dicola, of counsel and on the briefs).

Ramiro A. Perez, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine Lucarelli, General Counsel, attorney; Ramiro A. Perez, on the briefs).

James P. Lidon argued the cause for amicus curiae Rutgers, the State University of New Jersey (McElroy, Deutsch, Mulvaney & Carpenter, LLP, attorneys; James P. Lidon, of counsel and on the brief).

Matthew D. Areman argued the cause for amicus curiae New Jersey State Lodge of the Fraternal Order of Police (Markowitz and Richman, attorneys; Matthew D. Areman, on the brief).

Christopher J. Hamner, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Gurbir S. Grewal, Attorney General, attorney; Jane C. Schuster, Assistant Attorney General, of counsel; Achchana Ranasinghe, Deputy Attorney General, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This case presents the unsettled legal question of whether a campus police officer who has been terminated by a State university or college because of alleged non-criminal misconduct may challenge his termination through what is known as "special disciplinary arbitration" administered by the Public Employment Relations Commission ("PERC" or "the Commission"), pursuant to N.J.S.A. 40A:14-209 and -210.

The officer's employer, the New Jersey Institute of Technology ("NJIT") contends he is not eligible for such special disciplinary arbitration under the pertinent statutes for several reasons. Principally, NJIT argues the officer is

2

ineligible because he worked for an institution of higher education rather than a municipal police department. NJIT further contends such arbitration is not available because the officer has not been suspended without pay. In addition, NJIT argues the officer allegedly waived any rights he had to special disciplinary arbitration because he did not follow procedures in the collective negotiations agreement ("CNA") between NJIT and his labor union.

The Commission rejected NJIT's arguments. It held, consistent with its administrative rulings in other cases involving campus police officers and its regulations, that the officer was entitled to special arbitration as a matter of law. Among other things, the Commission determined that the NJIT police force is a "law enforcement agency" within the meaning of N.J.S.A. 40A:14-200, and that its officers who have been terminated for non-criminal conduct may elect under N.J.S.A. 40A:14-209 and -210 to have the Commission appoint a special arbitrator to conduct a hearing and evaluate whether the officer's discharge is justified. The Commission found that university police officers are not excluded from the special arbitration program because they work for an institution of higher education. The Commission rejected other arguments presented by NJIT, and this interlocutory appeal ensued.

3

For the reasons that follow, we affirm the Commission's determination that the NJIT police force is a "law enforcement agency" within the meaning of N.J.S.A. 40A:14-200. However, we conclude the NJIT officers are not eligible for special disciplinary arbitration because that option is restricted by N.J.S.A. 40A:14-150 to officers who work for municipal police departments in jurisdictions that are not part of the civil service system. In addition, even if that statutory restriction under N.J.S.A. 40A:14-150 did not pertain, the officer in this case is ineligible because he has not been suspended without pay, as required by N.J.S.A. 40A:14-209 and -210. That said, we reject NJIT's waiver argument because N.J.S.A. 40A:14-210(b) confers a statutory right upon eligible officers to file a special disciplinary arbitration request with the Commission, as was done here, within twenty days of receiving notice of their termination.

I.

A.

The NJIT Police Force

Before his discharge, co-respondent Gregory DiGuglielmo was a police officer employed by the NJIT Department of Public Safety. According to its 2019 Annual Campus Security Report ("Annual Report") posted on its website,

as of 2019, the Department had eighty-two members, consisting of a Chief of Police, a Deputy Chief, three Lieutenants, ten Sergeants, twenty-four police officers, thirty-eight security officers, and administrative support staff. See N.J. Inst. Tech., Annual Campus Security Report and Annual Fire Safety Report (2019).[1] All of the NJIT police officers "have graduated from an accredited police academy and are certified as police officers by the New Jersey Police Training Commission." Id. at 4. "They possess full police powers including the power of arrest." Ibid.

Pursuant to their statutory authority, NJIT police officers "have complete police authority to apprehend and arrest anyone involved in illegal acts on-campus and in reasonably contiguous areas surrounding the campus." Id. at 5; see also N.J.S.A. 18A:6-4.5 (declaring that every police officer appointed by an institution of higher education in this State "shall possess all the powers of policemen and constables in criminal cases and offenses against the law anywhere in the State of New Jersey, pursuant to any limitations as may be imposed by the governing body of the institution which appointed and commissioned the person").

---

[1] We take judicial notice of NJIT's description of its police force set forth in this published report, pursuant to N.J.R.E. 201 and 202.

As declared in NJIT's Annual Report, their officers "provide[] police protection to the campus and adjacent streets 24 hours a day/365 days a year." Id. at 4. The Department undertakes this mission "through the around-the-clock efforts of dedicated law enforcement professionals who create a highly visible police and public safety presence" in collaboration with "key stakeholders throughout the university." Ibid. The NJIT police officers "work closely with local, state, and federal police agencies and have direct communication with the Newark Police, Rutgers University-Newark Police, Essex County College Police, and the NJ Transit Police Departments." Id. at 5.

Officer DiGuglielmo was hired internally by NJIT to serve as a campus police officer. Since at least 1970, "any institution of higher education, academy, school or other institution of learning [in New Jersey] may appoint such persons as the governing body may designate to act as policemen [police officers] for the institution." N.J.S.A. 18A:6-4.2. Generally, the police chief of the municipality in which the educational institution is located must investigate and approve the background and suitability of applicants for campus police officer positions. N.J.S.A. 18A:6-4.3. However, Title 18A provides an exception to that external review process by the local police chief, specifying that "a college or university with an established police agency may conduct the

complete investigation of an applicant's criminal history, character, competency, integrity and fitness."  N.J.S.A. 18A:6-4.3a (emphasis added).  As represented by its counsel at oral argument, NJIT has taken advantage of that alternative hiring process and used it to hire Officer DiGuglielmo.  Ibid.

NJIT's Powers and Governmental Functions

NJIT has been created by the Legislature as a "public research university." N.J.S.A. 18A:64E-13.  The university encompasses numerous units, including the Newark College of Engineering, the New Jersey School of Architecture, the College of Science and Liberal Arts, the School of Industrial Management, and various extension and cooperative education programs.  Ibid.

As will soon become pertinent to our analysis, NJIT has been legislatively declared to be a "body corporate and politic."  N.J.S.A. 18A:64E-14.  The powers conferred upon NJIT by its enabling statute are "deemed to be public and essential governmental functions necessary for the welfare of the State and the people of New Jersey."  Ibid. (emphasis added).

NJIT is headed by a Board of Trustees, which oversees the "conduct, control, management and administration of the university."  N.J.S.A. 18A:64E-18.  The Board's wide powers include the authority to "appoint, remove, promote, and transfer" the employees of NJIT, prescribe qualifications for their

positions, and determine their salaries and compensation. N.J.S.A. 18A:64E-18(h). The Board is also authorized to enter into collective bargaining agreements. Ibid. Subject to dispute resolution proceedings called for under CNAs or as provided by university policy, "and further subject to and limited by any law to the contrary," the NJIT Board has "final authority to determine controversies and disputes concerning tenure, personnel matters and other issues involving the university arising under Title 18A." N.J.S.A. 18A:64E-18(i) (emphasis added).

In sum, the NJIT Board has broad powers over its educational functions and workforce, but those powers are "subject to and limited by" any laws that may curtail or override that authority. Ibid. Such overarching laws manifestly include — as will become apparent in our analysis, infra — statutes that govern or regulate how police officers employed by various governmental bodies may be hired, trained, disciplined, or terminated.

The Underlying Factual Context

The underlying factual contentions that led to this jurisdictional dispute have little bearing upon the pure legal issues that confront us. We briefly summarize those factual contentions, recognizing that no arbitration or other fact-finding proceeding has yet occurred.

Officer DiGuglielmo was issued a Notice of Termination for his conduct that allegedly occurred during a pursuit of a juvenile bicyclist on August 26, 2019. According to NJIT, DiGuglielmo was engaged in a hot pursuit after the juvenile was suspected of "Title 39" (i.e., motor vehicle and traffic) violations. DiGuglielmo was training a probationary officer on the night of the chase.

NJIT contends that DiGuglielmo instructed the trainee to "drive against traffic on a one-way street, cross an intersection from an unlawful direction," and also "failed to ensure [the police vehicle's] overhead warning lights were activated."

DiGuglielmo confirmed at his internal affairs interview that he had yelled profanity at the fleeing youth, which apparently can be heard on a video recording taken by an unidentified observer. The officer tackled the juvenile and restrained him, using mechanical restraints. The juvenile required medical attention as a result of this allegedly unauthorized use of force.

<u>The Investigation and Charges</u>

NJIT suspended Officer DiGuglielmo with pay on August 27, 2019 and notified him that he was the subject of an internal affairs investigation for his alleged misconduct.

NJIT referred the matter to the Essex County Prosecutor's Office to determine if criminal charges arising from the alleged use of excessive force should be issued against Officer DiGuglielmo. In October 2019, the Prosecutor's Office advised NJIT that "there [was] insufficient credible evidence to warrant a criminal prosecution" of the matter. The Prosecutor did not conclude, however, that there was "insufficient evidence to sustain administrative charges."

On November 15, 2019, Officer DiGuglielmo was served with a Disposition Letter and Notice of Disciplinary Action, which notified him that NJIT's internal investigation had sustained eleven charges against him for violating seven Department Rules and Regulations. Thereafter, on December 20, 2019, NJIT served upon the officer a letter formally notifying him that he was being terminated for cause.

PERC's Appointment of a Special Arbitrator

On January 8, 2020, Officer DiGuglielmo and his counsel filed with PERC a challenge to his termination and a request for special disciplinary arbitration under N.J.S.A. 40A:14-209 and -210. NJIT objected to that request, contending that the officer is not legally eligible for the arbitration.

After considering the competing legal positions of the parties, PERC concluded that it has jurisdiction over the officer's termination, and that he is indeed eligible to participate in the special disciplinary program. The Commission's Director of Conciliation and Arbitration issued a written decision on April 16, 2020, explaining the basis for that decision. Relying on previous administrative decisions it had issued on the subject and the text of PERC's regulations, the Director found that NJIT is a "law enforcement agency" within the meaning of N.J.S.A. 40A:14-200 and that Officer DiGuglielmo is a "law enforcement officer" employed by such an agency.

The Director rejected NJIT's procedural argument that the officer had waived any entitlement to special disciplinary arbitration in bypassing the disciplinary procedures contained in the CNA between NJIT and his labor union, the Fraternal Order of Police Lodge 93 ("FOP"). The Director reasoned that the statutory procedures concerning special disciplinary arbitration make that process "available to all law enforcement officers with narrow exceptions, regardless of whether they have a [labor union] representative." The Director noted in this regard that "N.J.S.A. 40A:14-210 only requires that an officer file for arbitration with PERC within 20 days of receiving notice of his termination." She added, "[t]he statute does not set forth any other requirements."

Having determined that Officer DiGuglielmo had timely and properly requested special disciplinary arbitration, the Commission in separate correspondence appointed an arbitrator to adjudicate the matter.

This Appeal and the Amici

NJIT then applied to this court for leave to appeal the Commission's exercise of jurisdiction and its appointment of an arbitrator. We granted that application and stayed the arbitration. Co-respondents DiGuglielmo and PERC have both opposed NJIT's appeal.

We invited the Attorney General to participate in this matter as amicus curiae, and have considered the limited arguments presented by his office on certain legal issues before us. In addition, we granted permission for the FOP to appear as an amicus on the side of the officer and NJIT, and for Rutgers University to appear as an amicus on the side of NJIT.

We have reviewed de novo the legal arguments of all parties and the amici. Maeker v. Ross, 219 N.J. 565, 574-75 (2014). In considering those arguments, we have accorded a degree of deference to the Commission, given its "broad authority and wide discretion" in the "highly specialized area" of the relations between an employer and employee in the public sector. In re Hunterdon Cnty. Bd. of Chosen Freeholders, 116 N.J. 322, 328 (1989). We similarly have given

substantial regard to the legal position of the Attorney General, given his dual roles as sole legal adviser to most agencies in State Government and also his statewide responsibilities in matters touching upon law enforcement. See Quarto v. Adams, 395 N.J. Super. 502, 513 (App. Div. 2007).

Several of the advocates have urged us to reach the issues of statutory interpretation in this case even if we might be able to resolve it on procedural grounds (such as waiver), because there are presently no published judicial opinions on point for guidance.

## II.

We begin our analysis with a discussion of the special disciplinary arbitration process and related statutes.

## A.

As a starting point, we recognize that most police officers in this State cannot be terminated or disciplined without proof of "just cause." N.J.S.A. 40A:14-147. The officer is entitled to written notice of the grounds for termination or discipline as well as an opportunity to be heard at a hearing "by the proper authorities." Ibid.

In 1937, the Legislature enacted Revised Statute 40:47-10, a provision designed to provide certain police officers who were found to have violated their

departments' rules and regulations with the right to obtain in the County Court of Common Pleas the judicial review of those decisions. L. 1937, c. 84, § 1. The right of judicial review under the 1937 statute was confined to officers who were employed in "any police department in any municipality in this state not operating under [the civil service laws]." Ibid. (emphasis added). Pursuant to that statute, the court had the authority to affirm or reverse the departmental findings and, if the latter, to order the officer restored to his position and to have his losses compensated. Ibid.

A year later in 1938, the Legislature extended this right of judicial review to disciplined municipal firefighters employed in non-Civil Service localities. R.S. 40:47-10, as amended by L. 1938, c. 298, § 1. In 1953, R.S. 40:47-10 was revised again to substitute the County Court for the Court of Common Pleas. L. 1953, c. 37, § 168.

Decades later in 1971, the Legislature repealed this statutory scheme in Title 40 and recodified it under Title 40A as N.J.S.A. 40A:14-150 ("Section 150"). As part of this recodification, the Legislature essentially replicated the key facets of the predecessor statute. L. 1971, c. 197, § 626. The provision was amended again in 1981 in ways not important to our analysis. L. 1981, c. 75, § 6.

As the statute evolved, these various amendments preserved the critical ingredients that the independent judicial review process under the statute would be "de novo" and that the court can supplement the record created at the local level. See Ruroede v. Borough of Hasbrouck Heights, 214 N.J. 338, 344 (2013).

The 2009 Amendments

Significantly for the present case, in 2009 the Legislature adopted a package of amendments that enhanced the rights of certain disciplined police officers and firefighters. L. 2009, c. 16, §§ 1-16. As a component of that reform, the Legislature created what is now termed "special disciplinary arbitration" as an alternative process to the court-based review available under Section 150. The 2009 statutory revision was accomplished by revising Section 150 and also by inserting new provisions in additional sections.

The 2009 legislation includes a definitional section, which directly impacts the present case, at N.J.S.A. 40A:14-200 ("Section 200"). Section 200 defines the operative terms "law enforcement agency" and "law enforcement officers."

The term "law enforcement officer" is defined in the statute as:

> [A]ny person who is employed as a permanent full-time member of any State, county, or municipal law enforcement agency, department, or division of those governments who is statutorily empowered to act for

15

the detection, investigation, arrest, conviction, detention, or rehabilitation of persons violating the criminal laws of this State and statutorily required to successfully complete a training course approved by, or certified as being substantially equivalent to such an approved course, by the Police Training Commission . . . .

[N.J.S.A. 40A:14-200 (emphasis added).]

Further, N.J.S.A. 40A:14-200 defines a "law enforcement agency" as:

[A]ny public agency, other than the Department of Law and Public Safety, but not including the Juvenile Justice Commission, any police force, department, or division within the State, or any county or municipality thereof, which is empowered by statute to act for the detection, investigation, arrest, conviction, detention, or rehabilitation of persons violating the criminal laws of this State.

[Ibid. (emphasis added).]

These defined terms are utilized in provisions adopted in 2009 that allow eligible police officers and firefighters: (1) in Civil Service jurisdictions to obtain review of their proposed termination before an Administrative Law Judge in the Office of Administrative Law ("OAL") and thereafter the Civil Service Commission ("CSC"), see N.J.S.A. 40A:14-201 to -208, and (2) in non-Civil Service municipalities to obtain "special disciplinary arbitration" by an arbitrator appointed by PERC. See N.J.S.A. 40A:14-209 ("Section 209") and -210 ("Section 210").

16

Special disciplinary arbitration is described in depth in Sections 209 and 210. Section 209 focuses particularly upon the officer's right to be paid wages while he or she is awaiting the completion of the special arbitration process. In this regard, subsection (a) of Section 209 reads as follows:

> a. When a law enforcement officer or firefighter employed by a law enforcement agency or department that is not subject to the provisions of Title 11A of the New Jersey Statutes is suspended from performing his official duties without pay for a complaint or charges, other than (1) a complaint or charges relating to the subject matter of a pending criminal investigation, inquiry, complaint, or charge whether pre-indictment or post indictment, or (2) when the complaint or charges allege conduct that also would constitute a violation of the criminal laws of this State or any other jurisdiction, and the law enforcement agency or department employing the officer or firefighter seeks to terminate that officer's or firefighter's employment for the conduct that was the basis for the officer's or firefighter's suspension without pay, the officer, as an alternative to the judicial review authorized under N.J.S.40A:14-150, and the firefighter, as an alternative to the judicial review authorized under N.J.S.40A:14-22, may submit an appeal of his suspension and termination to the Public Employment Relations Commission for arbitration conducted in accordance with the provisions of section 11 of P.L.2009, c. 16 (C.40A:14-210). A final determination on the officer's or firefighter's suspension and termination shall be rendered by an arbitrator within 180 calendar days from the date the officer or firefighter is suspended without pay.

> If a final determination is not rendered within those 180 days, as hereinafter calculated, the officer or firefighter shall, commencing on the 181st calendar day, begin again to receive the base salary he was being paid at the time of his suspension and shall continue to do so until the final determination on the officer's or firefighter's termination is rendered.
>
> [N.J.S.A. 40A:14-209(a) (emphasis added).]

Subsections (b) through (c) of Section 209 go on to address how to calculate the 180-day period, and the effect of any delays or adjournments. N.J.S.A. 40A:14-209(b) and (c).

The next provision, Section 210, details the procedures to be followed within the special disciplinary arbitration process. That provision states, in pertinent part:

> a. In lieu of serving a written notice to the Superior Court under the provisions of N.J.S.40A:14-150 or N.J.S.40A:14-22, as appropriate, seeking review of the termination of his employment for a complaint or charges, other than a complaint or charges relating to a criminal offense, as prescribed in subsection a. of section 10 of P.L.2009, c. 16 (C.40A:14-209), an officer or firefighter may submit his appeal to arbitration as hereinafter provided.
>
> b. Within 20 days of receiving notice of termination, the officer or firefighter shall submit his appeal for arbitration to the Public Employment Relations Commission. The appeal shall be filed in a manner and form prescribed by the commission.

> Upon receipt of such an appeal, the commission shall forthwith notify the employing agency or department of the appeal.
>
> [N.J.S.A. 40A:14-20(a) and (b) (emphasis added).]

Subsections (c) through (h) of Section 210 spell out other facets of the special disciplinary arbitration once that process has been elected by an eligible law enforcement officer. In particular, subsections (c) and (d) address how the special arbitrator is chosen. Ibid. Subsection (e) authorizes the arbitrator to administer oaths, require the attendance of witnesses and the production of documents, and issue subpoenas. Ibid. Subsection (f) requires the arbitrator to issue a decision within ninety days. Ibid. Subsection (g) instructs that if the arbitrator rules in favor of the officer, he or she must be reinstated with full pay; conversely, if the arbitrator rules for the employer, the officer must reimburse the employer for any pay the officer received during the pendency of the matter pursuant to Section 209. Ibid. Lastly, subsection (h) addresses payment issues in instances in which the arbitrator's decision is appealed. Ibid.

The legislative history of these 2009 provisions reflects a strong policy concern about suspended officers who are unpaid while awaiting a disposition of the disciplinary charges. As the Committee Statement of the Assembly Law

and Public Safety Committee, concerning the bill that became law, A. 3481, noted:

> As amended and reported by the committee, Assembly Bill No. 3481 <u>entitled certain law enforcement officers</u> and paid firefighters <u>who are appealing terminations for noncriminal complaints or charges to again begin receiving their base salary</u> if a final determination on their appeal is not rendered within 180 days.
>
> <u>Starting on the 181st [day]</u> following their suspension without pay, <u>law enforcement officers</u> or firefighters <u>would begin again to receive the base salary</u> that they were being paid prior to their termination and to continue to receive that salary until a final determination on their appeal is rendered. <u>If the law enforcement officer or firefighter prevails in the appeal, the salary moneys that have been withheld are to be paid to that law enforcement officer</u> or firefighter.
>
> [Assembly Law and Public Safety Comm. Statement to Assembly, A. 3481 (L. 2009, c. 16) (emphasis added).]

In the same vein, the Governor's Message on Signing of the 2009 legislation stated, "[t]his bill provides a fair safeguard to law enforcement, . . . a safeguard that is appropriate in light of their unique contribut[ions] to the state by risking themselves to protect others." <u>Governor's Message on Signing</u> (Mar. 5, 2009). The Governor added:

> We know that the fact-finding and deliberative process can take many months; and that this places a very heavy burden on people, who then must cope with extreme

> financial hardship caused by a protracted suspension of salary at a difficult and emotional time when their careers are, essentially, in limbo.
>
> [Ibid.]

PERC's Regulations

Pursuant to N.J.S.A. 40A:14-211, PERC promulgated regulations, N.J.A.C. 19:12-6.1 to -6.8, to administer the special disciplinary arbitration process. In particular, N.J.A.C. 19:12-6.4(a) provides that "[a]n appeal of a disciplinary termination of <u>a non-civil service firefighter or law enforcement officer</u> shall be initiated by filing a written request with the Director of Arbitration for the appointment of an arbitrator from the Commission's Special Disciplinary Arbitration Panel." (Emphasis added). The regulations do not define the term "law enforcement officer" and presumably apply the statutory definition in Section 200. <u>See</u> N.J.A.C. 19:12-6.1(a).

Tracking Section 210, PERC regulations specify that the special disciplinary arbitrator "may administer oaths and require the attendance of witnesses and the production of such documents as the arbitrator may deem material to a just determination of the appeal, and for such purpose may issue subpoenas." N.J.A.C. 19:12-6.6(a). Further, "[t]he arbitrator shall have the power to resolve any discovery issues," and "communicate with the parties to

21

arrange for a mutually satisfactory date, time and place for a hearing, which shall be conducted within 60 days after the arbitrator is appointed." N.J.A.C. 19:12-6.6 (b) and (c).

Additionally, subsection (d) of N.J.A.C. 19:12-6.6 provides that "[h]earings shall be de novo proceedings and shall not be limited to review of any prior proceedings or hearings held in order to impose discipline in accordance with . . . N.J.S.A. 40A:14-147." The arbitrator "shall render an opinion and final determination within 90 days of his or her appointment . . . ." N.J.A.C. 19:12-6.7(a).

We now consider the legal and jurisdictional arguments presented to us with these various statutes and regulations in mind.

## B.

NJIT argues it is not obligated to participate in PERC's special disciplinary arbitration process for several reasons. As a general theme, NJIT, joined in this regard by amicus Rutgers, contends that New Jersey universities and other public institutions of higher education are autonomous entities created under Title 18A and their police forces should not be regarded as "law enforcement agencies" subject to the provisions of Title 40A. We disagree, and affirm PERC's sound interpretation of this pivotal term.

The definition in Section 200 of a "law enforcement agency," which we have quoted above, encompasses two broad concepts. First, the definition includes "<u>any public agency</u>, other than the Department of Law and Public Safety, but not including the Juvenile Justice Commission." <u>Ibid.</u> (emphasis added). Second, the definition also encompasses "<u>any police force</u>, department or division within the State, or any county or municipality thereof." <u>Ibid.</u> (emphasis added). Further, such a "public agency" or "police force" must be "<u>empowered by statute</u> to act for the detection, investigation, arrest, conviction, detention, or rehabilitation of persons violating the criminal laws of this State." <u>Ibid.</u> (emphasis added). The NJIT police unit satisfies these definitions.

NJIT's Department of Public Safety is clearly a public agency. As we have already noted, NJIT is a public institution, a "body corporate and politic" created by the Legislature. N.J.S.A. 18A:64E-14. The university's activities are "deemed to be <u>public and essential governmental</u> functions." <u>Ibid.</u> (emphasis added).

Moreover, NJIT enjoys the immunities and defenses of a "public entity" under the Tort Claims Act. <u>See</u> <u>Bonitsis v. New Jersey Inst. of Tech.</u>, 363 N.J. Super. 505 (App. Div. 2003), <u>certif. granted, judgment rev'd</u>, 180 N.J. 450 (2004); <u>see also</u> N.J.S.A. 59:1-3 (defining a "public entity" under the Tort

Claims Act to include "any . . . public agency, and any other . . . public body in the State."). It would subvert legislative consistency to treat NJIT as a public body or agency for other parts of State law, but to not likewise treat it as a public body or public agency under N.J.S.A. 40A:14-200.

In addition, NJIT's police officers clearly work for a "police force." Indeed, their hiring by the Department was accomplished through NJIT's express hiring authority under N.J.S.A. 18A:6-4.3a as "a college or university with an established police agency." As described on its website, NJIT has a large and well-established police force, and it has grown to a department consisting of over eighty employees that include two dozen police officers. Having taken advantage of the hiring prerogatives of "an established police agency" that bypass a local police chief's statutory hiring approval, NJIT cannot fairly avoid being considered a "law enforcement agency." The two concepts are logically synonymous.

Third, there is no doubt that NJIT's police officers are empowered by statute -- i.e., Title 18A -- to engage in the "detection, investigation, arrest, conviction, detention, or rehabilitation of persons violating the criminal laws of this State." N.J.S.A. 40A:14-200. The university's own website touts these traditional police powers. Annual Report at 4-5; see also N.J.S.A. 18A:6-4.5

(confirming university police officers "shall possess all the powers of policemen . . . pursuant to any limitations as may be imposed by the governing body of the institution which appointed and commissioned the person") (emphasis added). Here, the public body that appointed and commissioned Officer DiGuglielmo and his fellow officers was NJIT, not the Newark municipal police department.

Finally, as the Attorney General points out, there are sensible policy reasons for treating campus police officers as being subject to the policies on use of force and other "law enforcement" activities that are overseen statewide by the Attorney General.[2] In fact, N.J.S.A. 40A:14-181 mandates such adherence and expressly treats campus police departments as "law enforcement agencies" in its language: "Every law enforcement agency, including a police

_____

[2] In the Attorney General's amicus brief, counsel explained the following in a footnote:

> [T]he Attorney General's law-enforcement directives have been long-considered binding on campus police forces. See, e.g., Attorney General Law Enforcement Directive 2000-4, "Revision To August 14, 1995, Directive Implementing Procedures For The Seizure Of Weapons From All State Law Enforcement Officers Involved In Domestic Violence Incidents" (Sept. 1, 2000) (issued with letter from Attorney General, dated Sept. 19, 2000, specifically including campus police as state law-enforcement officers for purpose of Directive).

<u>department of an institution of higher education</u> . . . , shall adopt and implement guidelines which shall be consistent with the guidelines governing the 'Internal Affairs Policy and Procedures' of the Police Management Manual. . . ." (Emphasis added).

In sum, a plain reading and application of the statutory language, as well as common sense, demonstrate that Officer DiGuglielmo is a "law enforcement officer" who was employed by a "law enforcement agency" within the definitional ambit of N.J.S.A. 40A:14-200.

C.

Despite our conclusion that Officer DiGuglielmo is employed by a "law enforcement agency," the statutory analysis does not end there. We must now consider whether the cross-references within both Sections 209 and 210 to Section 150 (i.e., N.J.S.A. 40A:14-150) affect his eligibility for special disciplinary arbitration. We conclude that Section 150 precludes him, as a non-municipal police officer, from availing himself of the special disciplinary arbitration process.

Section 150, was amended as part of the 2009 legislation to insert an express reference to special disciplinary arbitration:

> <u>Any member or officer of a police department or force</u>
> <u>in a municipality wherein Title 11A of the New Jersey</u>

Statutes is not in operation, who has been tried and convicted upon any charge or charges, may obtain a review thereof by the Superior Court; provided, however, that in the case of an officer who is appealing removal from his office, employment or position for a complaint or charges, other than a complaint or charges relating to a criminal offense, the officer may, in lieu of serving a written notice seeking a review of that removal by the court, submit his appeal to arbitration pursuant to section 10 of P.L.2009, c. 16 (C. 40A:14-209). Such review shall be obtained by serving a written notice of an application therefor upon the officer or board whose action is to be reviewed within 10 days after written notice to the member or officer of the conviction. The officer or board shall transmit to the court a copy of the record of such conviction, and of the charge or charges for which the applicant was tried. The court shall hear the cause de novo on the record below and may either affirm, reverse or modify such conviction. If the applicant shall have been removed from his office, employment or position the court may direct that he be restored to such office, employment or position and to all his rights pertaining thereto, and may make such other order or judgment as said court shall deem proper.

[Ibid. (emphasis added).]

Section 209, which establishes special disciplinary arbitration, refers to that process "as an alternative to the judicial review authorized under N.J.S.40A:14-150." N.J.S.A. 40A:14-209(a). Similarly, its companion provision Section 210, which delineates the special arbitration process, begins with the phrase: "In lieu of a serving of written notice to the Superior Court

under the provisions of N.J.S.A. 40A:14-150 . . . [the following procedures apply]." N.J.S.40A:14-210(a). These provisions clearly work in tandem to incorporate, by reference, the terms and limitations of Section 150.

Plainly, Section 150 is limited to officers "of <u>a police department or force in a municipality</u> wherein Title 11A of the New Jersey Statute [civil service] is not in operation . . . [.]" N.J.S.A. 40A:14-150 (emphasis added). The statutory definition of a "municipality" stems back to 1917, when the Legislature enacted <u>L.</u> 1917, <u>c.</u> 152. In current form, our statutes define a "municipality" as a "'city', 'town', 'township', 'village', 'borough', and any municipality governed by a board of commissioners, or improvement commission." N.J.S.A. 40:42-1. NJIT is none of these things. By any stretch of the imagination NJIT simply isn't a "municipality." Consequently, special disciplinary arbitration is unavailable to its officers.[3]

---

[3] We are aware that our court's opinion in <u>Bergen Cnty. Law Enf't Grp. v. Bergen Cnty. Board of Chosen Freeholders</u>, 191 N.J. Super. 319, 326 (App. Div. 1983), could be read to suggest that a county sheriff's officer might qualify as a municipal police officer under N.J.S.A. 40A:14-150. We decline to follow that interpretation here. For one thing, that opinion was deemed "highly questionable" on other grounds in <u>State v. State Troopers Fraternal Ass'n</u>, 134 N.J. 393, 412-13 (1993). In addition, there is no analytical reason to treat university police officers as <u>municipal</u> police officers, and no legislative history or statutory text supports that notion.

Our conclusion on this point is not undermined by the portion of N.J.S.A. 40A:14-200 that excludes the Department of Law and Public Safety from the definition of a "law enforcement agency," but then carves out of that exclusion the Juvenile Justice Commission ("JJC"). Clearly, the Department of Law and Public Safety is a State, not municipal, body. See N.J.S.A. 52:17B-1. The JJC, which is within that Department, likewise is not a municipality. See N.J.S.A. 52:17B-170. Yet it is not superfluous for the definition within Section 200 to address these State entities. That is because, despite the inapplicability of Sections 209 and 210 to non-municipal agencies, other portions of the 2009 act, i.e. Sections 201 through 208, do pertain to non-municipal entities that are within the Civil Service system. Those provisions in Sections 201 through 208 address an eligible officer's hearing rights in the OAL and further review by the CSC of the Administrative Law Judge's decision.

Consequently, the exclusion of all but the JJC within the Department of Law and Public Safety from Section 200 accomplished a separate purpose, one not in play here, to exclude the officers in Civil Service titles within that Department (except for JJC officers), such as certain members of the State Police, from the OAL proceedings and CSC review set forth in Sections 201 through 208. The exclusion was not superfluous. See, e.g., N.J.S.A. 53:1-5

29                                                                      A-3772-19T2

through -7, and -11.7 (recognizing that some State Police officers are in the "classified" (i.e., Civil Service) system).

Hence, because Officer DiGuglielmo was not employed by a municipal law enforcement agency, Section 150 bars his eligibility for special disciplinary arbitration. Nothing in the statute's text or legislative history shows otherwise.[4]

D.

We need not comment much about the remaining issues but do so briefly for the sake of completeness.

First, even if, for the sake of discussion, Officer DiGuglielmo could be categorically eligible for special disciplinary arbitration despite his status as a non-municipal officer, the fact that he has been suspended <u>with</u> pay precludes him from availing himself of that hypothetical option. We do not read Section 210 to nullify the eligibility requirement of suspension-without-pay repeatedly stated within Section 209.

---

[4] In light of our ruling, we recommend that PERC consider revising its regulations concerning special disciplinary arbitration, particularly N.J.A.C. 19:12-6.4, to incorporate this omitted limitation. Additionally, the unpublished administrative decisions of PERC that suggested to the contrary, which were never upheld in published case law, are repudiated, to the extent that they conflict with our opinion.

Second, we reject the argument of NJIT and the Attorney General that Officer DiGuglielmo waived any right to special disciplinary arbitration because he bypassed the grievance steps set forth in the CNA. An eligible officer has a statutory right to invoke special internal arbitration "[w]ithin [twenty] days" of receiving a notice of termination. N.J.S.A. 40A:14-210(b). As PERC correctly found, the CNA's grievance procedures cannot override this statutory entitlement. See N.J.S.A. 34:13A-5.3. Consequently, we need not reach Officer DiGuglielmo's claim that the procedures within the CNA violate principles of due process.

Any other issues presented, to the extent we have not mentioned them, do not warrant comment. R. 2:11-3(e)(1)(E).

### III.

For the foregoing reasons, we reverse PERC's decision and vacate its order to appoint a special disciplinary arbitrator. Beyond that determination, we express no views about the respective rights of the parties concerning the officer's proposed termination, including whether or not the filing deadlines within the CNA should now be equitably tolled because of a mistaken premise that the officer was eligible for special disciplinary arbitration.

Affirmed in part, reversed in part.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3772-19T2